# 22-4

IN THE

# United States District Court of Appeals

## FOR THE SECOND CIRCUIT

GEORGE MANDALA and CHARLES BARNETT,
individually and on
behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

NTT DATA, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF FOR THE PLAINTIFFS-APPELLANTS

<table>
<tr>
<td>

OSSAI MIAZAD
CHRISTOPHER M. MCNERNEY
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

*Attorneys for Plaintiffs-Appellants*

</td>
<td>

SAMUEL SPITAL
RACHEL M. KLEINMAN
TIFFANI BURGESS
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

*Attorneys for Plaintiffs-Appellants*

</td>
</tr>
</table>

MOIRA HEIGES-GOEPFERT
OUTTEN & GOLDEN LLP
One California, 12TH Floor
San Francisco, CA 94111
(415) 638-8800

*Attorney for Plaintiffs-Appellants*

## <u>CORPORATE DISCLOSURE</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellants state as follows: George Mandala and Charles Barnett are not corporations, and therefore Rule 26.1 does not require any disclosures with respect to them.

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ....................................................... i

STATEMENT OF JURISDICTION ..................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................1

STATEMENT OF THE CASE...........................................................................2

I.     Factual Background ................................................................................2

II.    Relevant Procedural History.................................................................2

        A. NTT's Motion to Dismiss.................................................................4

        B. Prior Appeal....................................................................................7

        C. *En Banc* Proceedings.......................................................................8

        D. Rule 60 Motion.............................................................................11

III.   The District Court's Ruling ................................................................13

SUMMARY OF THE ARGUMENT ..................................................................16

ARGUMENT ................................................................................................18

I.     Standard of Review............................................................................18

II.    Legal Standard ..................................................................................19

III.   The District Court Applied an Incorrect Legal Standard. ...........................21

        A. Supreme Court and Second Circuit Precedent Establish It Is an Abuse of Discretion to Deny Post-Judgment Relief Solely Based on the Purported Failure to Seek Earlier Leave to Amend. ..................................................22

        B. The District Court Failed to Give Due Regard to Rule 15.......................25

            i.   Error 1: Plaintiffs Had No Prior Opportunity to Amend. .............26

            ii.  Error 2: The District Court Failed to Properly Assess Rule 60(b)(6) in Light of Rule 15. ..........................................................................29

C. The District Court Erred by Evaluating Plaintiffs' Rule 60(b)(6) Motion Under the Standard for Rule 60(b)(1) ....................................................33

IV. Plaintiffs Have Established "Extraordinary Circumstances." .......................38

CONCLUSION ..........................................................................................44

CERTIFICATE OF COMPLIANCE .......................................................45

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
   87 F. Supp. 2d 281 (S.D.N.Y. 2000) ...................................................31

*Albemarle Paper Co. v. Moody*,
   422 U.S. 405 (1975)...........................................................................42

*Stone v. I.N.S.*,
   514 U.S. 386 (1995)...........................................................................27

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ..............................................................19

*Branum v. Clark*,
   927 F.2d 698 (2d Cir. 1991) .........................................................24, 34

*Buck v. Davis*,
   137 S. Ct. 759 (2017)....................................................................17, 32

*City of New York v. Group Health Inc.*,
   649 F.3d 151 (2d Cir. 2011) ..............................................................19

*Cruickshank & Co. v. Dutchess Shipping Co.*,
   805 F.2d 465 (2d Cir. 1986) ..............................................................27

*Foman v. Davis*,
   371 U.S. 178 (1962)...................................................................*passim*

*Grullon v. City of New Haven*,
   720 F.3d 133 (2d Cir. 2013) ..............................................................29

*Indiana Public Retirement Systems v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016) ....................................................24, 25, 33

*Kotlicky v. U.S. Fid. & Guar. Co.*,
   817 F.2d 6 (2d Cir. 1987) ............................................................19, 32

*LeBlanc v. Cleveland*,
   248 F.3d 95 (2d Cir. 2001) .........................................................*passim*

iv

*Liljeberg v. Health Services Acquisition Corp.*,
   486 U.S. 847 (1988) ..................................................................................21, 42

*Mandala v. NTT Data, Inc.*,
   975 F.3d 202 (2d Cir. 2020) ........................................................................7, 8, 9

*Mandala v. NTT Data, Inc.*,
   988 F.3d 664 (2d Cir. 2021) ........................................................................*passim*

*Marrero Pichardo v. Ashcroft*,
   374 F.3d 46 (2d Cir. 2004) ........................................................................20, 40

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ........................................................................30

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
   970 F.3d 133 (2d Cir. 2020) ........................................................................*passim*

*Oliver Sch., Inc. v. Foley*,
   930 F.2d 248 (2d Cir. 1991) ........................................................................24

*Palacios v. Coca-Cola Co.*,
   499 F. at 56 (2d Cir. 2012) ........................................................................27

*Pena v. Recore*,
   12 F. App'x 62 (2d Cir. 2001) ........................................................................29

*Pettiford v. City of Yonkers*,
   No. 14 Civ. 6271, 2018 WL 3364394 (S.D.N.Y. July 10, 2018) ......................21

*Porat v. Lincoln Towers Cmty. Ass'n*,
   464 F.3d 274 (2d Cir. 2006) ........................................................................28

*Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC*,
   No. 07 Civ 3494, 2016 WL 6952248 (S.D.N.Y. Nov. 28, 2016) ......................35

*Sacerdote v. New York Univ.*,
   9 F.4th 95 (2d Cir. 2021) ........................................................................36

*Savis v. Musler*,
   713 F.2d 907 (2d Cir. 1983) ........................................................................21

*Simone v. Prudential Ins. Co. of Am.*,
164 F. App'x 39 (2d Cir. 2006) ..........................................................27

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
654 F.2d 843 (2d Cir. 1981) ...............................................................26

*Stevens v. Miller*,
676 F.3d 62 (2d Cir. 2012) ...........................................................34, 35

*United Airlines, Inc. v. Brien*,
588 F.3d 158 (2d Cir. 2009) ...............................................................20

*United States v. Cirami*,
563 F.2d 26 (2d Cir. 1977) .................................................................21

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) ......................................................*passim*

**STATUTES**  **PAGE(S)**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1367 .......................................................................................1

42 U.S.C. § 2000e–5(f)(3) ....................................................................1, 2

**OTHER AUTHORITIES**  **PAGE(S)**

*America*, Back Cover Copy*,*
*https://www.russellsage.org/publications/punishment-and-inequality-america-1* .........................................................................15

Bruce Western, *Punishment and Inequality in America* 27 (Russell
Sage Foundation, 2006) .........................................................................9

Bruce Western, *Punishment and Inequality in America* 27 (Russell
Sage Foundation, 2006), Back Cover Copy,
*https://www.russellsage.org/publications/punishment-and-inequality-america-1* .........................................................................15

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
Procedure* § 1473 (3d ed. 2021) .........................................................36

vi

Fed. R. Civ. P. 12(b)(6)...........................................................................16

Fed. R. Civ. P. 15................................................................................*passim*

Fed. R. Civ. P. 59................................................................................*passim*

Fed. R. Civ. P. 60................................................................................*passim*

*Race/Ethnicity*, Prison Pol'y Initiative (May 28, 2014)
    (https://www.prisonpolicy.org/reports/rates.html) ...............................................3

## STATEMENT OF JURISDICTION

The Court has appellate jurisdiction over the final order of the Honorable Charles J. Siragusa of the District Court for the Western District of New York (the "district court") denying Plaintiffs-Appellants' George Mandala and Charles Barnett ("Plaintiffs'") motion to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), entered on or about December 6, 2021, pursuant to 28 U.S.C. § 1291. The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e–5(f)(3), and 28 U.S.C. § 1367. Plaintiffs timely filed their Notice of Appeal on December 30, 2021. JA315-16.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the district court erred in its application of Rule 60(b)(6) by failing to give due regard to Rule 15, by: (i) holding that Plaintiffs are precluded from obtaining relief under Rule 60(b)(6) because they appealed, rather than first filing a formal motion for leave to amend, after the district court dismissed their claims with prejudice and (ii) failing to balance Rule 60(b)(6) against Rule 15 considerations.

Whether the district court improperly applied Rule 60(b)(1) instead of 60(b)(6), and thus denied Plaintiffs' motion as untimely.

Whether the district court erred by rejecting Plaintiffs' showing of extraordinary circumstances.

1

## STATEMENT OF THE CASE

### I.  Factual Background

Plaintiffs are African Americans whom NTT denied employment based on years-old criminal convictions that had no connection to NTT, pursuant to a blanket policy and practice of denying employment to individuals because of certain criminal convictions (including felony convictions) without any individualized analysis.  JA8-11 (¶¶ 30-36, 44-51).  In March 2017, Plaintiff Mandala accepted a formal offer letter from NTT for a job as an Application Software Development Consultant.  JA8 (¶ 27).  Similarly, in or around July 2017, Plaintiff Barnett accepted an offer for a job designing websites for the Commonwealth of Kentucky as an NTT employee.  JA10 (¶¶ 38-43).  However, after learning of Plaintiffs' conviction histories, NTT rescinded their job offers without providing an individualized review, explaining to each that NTT has a policy not to hire individuals with certain criminal convictions, including felony convictions.  JA8-11 (¶¶ 30-36, 44-51).

### II.  Relevant Procedural History

On August 15, 2018, Plaintiffs filed a class action complaint in the U.S. District Court for the Western District of New York, alleging disparate impact discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as violations of the New

York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, Article 23-A of the New York State Correction Law, N.Y. Corr. Law § 750 *et seq.*, and the New York State Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380 *et seq.*  JA4-27.

As to Title VII, Plaintiffs alleged that NTT's nationwide policy of categorically rejecting individuals with certain criminal convictions disparately impacts African-American applicants due to racially disproportionate arrest and conviction rates, which are attributable to racial bias in the criminal justice system nationwide.  JA5, 11-14 (¶¶ 6, 52-62).  Plaintiffs cited to statistics from the Department of Justice, Federal Bureau of Investigation, and various research groups and scholars showing that (1) African Americans are arrested, convicted and incarcerated at dramatically higher rates than whites relative to their share of the population, both nationally and in every state;[1] (2) African Americans with criminal records are particularly disadvantaged in the job market compared to

---

[1]    JA11-12 (¶¶ 52-54 & nn. 1-3).  For example, Plaintiffs cited Equal Employment Opportunity Commission ("EEOC") data showing that "Blacks are arrested and convicted at higher rates than Whites," *EEOC Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964*, at 9-10 (April 25, 2012) ("EEOC Enforcement Guidance"), and research from the Prison Policy Initiative research showing racial disparities in incarceration rates nationally and in every state, Leah Sakala, *Breaking Down Mass Incarceration in the 2010 Census: State-by-State Incarceration Rates by Race/Ethnicity*, Prison Pol'y Initiative (May 28, 2014) (https://www.prisonpolicy.org/reports/rates.html).

whites with criminal records;[2] and (3) the EEOC's determination that, in the

employment context, "national data supports a finding that criminal record

exclusions have a disparate impact based on race and national origin."[3]

## A. NTT's Motion to Dismiss

In November 2018, NTT moved to dismiss, arguing, inter alia, that Plaintiffs

failed to state a claim for disparate impact discrimination under Title VII. JA28-

51. First, NTT argued that Plaintiffs' statistics were insufficient because they were

not limited to "felony convictions" (but rather covered all "crimes," including

misdemeanors and felonies alike) and thus, according to NTT, failed to plausibly

allege that "African Americans have more 'felonies on their records' than other

racial groups." JA36. Second, NTT argued that Plaintiffs' data was not "specific

to NTT" and not limited to individuals with Plaintiffs' skill sets and therefore

could not show impact in the "applicable labor pool." JA31, 36. In NTT's view,

to meet their pleading burden, Plaintiffs would have to cite specialized "statistics

---

[2]    JA12 (¶ 54) (citing Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals Am. Acad. Pol. & Soc. Sci. 195, 199 (2009); Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61 (2003)).

[3]    JA11-12 (¶¶ 52, n.1) (citing EEOC Enforcement Guidance).

4

supporting that African Americans with *[Plaintiffs'] technical skill set* are *convicted of felonies* at a higher rate than other racial groups." JA36.

In December 2018, Plaintiffs opposed NTT's motion, arguing, inter alia, that statistics showing pervasive disparities in the representation of African Americans in the criminal justice system—across arrest, conviction, and incarceration rates for all crimes, nationally and in every state—and resulting discrimination in the job market, were sufficient to plead disparate impact resulting from NTT's exclusionary criminal history policy. JA57-65. Plaintiffs also made clear that they were seeking an opportunity to amend if the district court credited any of NTT's arguments. JA74 ("Nonetheless, even if the Court were to credit any of NTT's argument[s], each could be easily cured through a routine amendment to the Complaint.").

On July 18, 2019, the district court granted NTT's motion to dismiss. JA88-94. The court dismissed Plaintiffs' Title VII claims with prejudice and without providing leave to amend, and declined to exercise supplemental jurisdiction over Plaintiffs' state law claims. JA88-94. The district court acknowledged that Plaintiffs had (1) pleaded a policy or practice (NTT's policy of denying jobs to individuals with certain criminal convictions), and (2) alleged racial disparities in arrest, conviction and incarceration rates, but nevertheless found that (3) Plaintiffs

failed to establish a causal relationship showing that the alleged policy resulted in racial disparities under Title VII. JA92-94.

As to the critical third factor, the district court endorsed NTT's argument that Plaintiffs' statistics failed to specifically show racial disparities in "felony convictions" (as opposed to criminal convictions generally), and thus were not sufficiently matched to Plaintiffs' "felony convictions." JA93-94. The district court also agreed with NTT that Plaintiffs' statistics failed to plead a causal relationship because they were not drawn from individuals who shared Plaintiffs' specific technical skills and qualifications. JA93 (finding that national statistics were inadequate because they were not limited to "individuals . . . [who] shared qualifications that would make them viable candidates for . . . the positions offered to Plaintiffs").

As a result, the district court found that "*general statistics are inadequate* to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions," and stated that "Plaintiffs have not alleged facts showing that Defendant's facially-neutral policy of not hiring convicted felons is related to the statistical disparity" of African Americans "arrested and convicted of crimes in proportion to their representative numbers in the pool of qualified applicants for Defendant's positions." JA93-94 (emphasis supplied). In particular, the district court rejected Plaintiffs' reliance on

6

national statistics, holding that such statistics "do not indicate whether the individuals in the general population cited shared qualifications that would make them viable candidates for either of the positions offered to Plaintiffs." *See Mandala v. NTT Data, Inc.*, 988 F.3d 664, 673 (2d Cir. 2021) ("*Mandala* II") (Chin, J., dissenting from denial of *en banc*) (describing and quoting district court's opinion).

Neither the district court nor NTT identified any alternative way (apart from accessing NTT's applicant data) that Plaintiffs could support an inference of disparate impact based on statistics. Nothing in the district court's opinion suggested that statistics concerning racial disparities in conviction rates for college-educated individuals would make a difference in the district court's analysis of whether plaintiffs had presented sufficient facts to support a disparate impact claim. *See generally* JA88-94.

## B. Prior Appeal

Plaintiffs timely appealed the district court's order of dismissal with prejudice. On September 21, 2020, a divided panel affirmed the order in a 2-1 decision. The panel majority recognized that statistics revealing "disparities between populations that are relevant" to Plaintiffs' claims would be sufficient. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 210 (2d Cir. 2020) ("*Mandala I*"). Nevertheless, the majority found that Plaintiffs failed to allege facts suggesting that

7

their nationwide statistics "might accurately reflect [NTT's] pool of qualified job applicants." *Id.* at 211. In particular, the panel found that national statistics might not be probative because "it is *not much of a stretch to imagine that arrest and conviction rates are negatively correlated with education*" (such that conviction rates, overall, would likely be lower in NTT's educated applicant pool, relative to the general population). *Id.* at 212 (emphasis supplied).

Notably, the majority did not adopt the district court's finding that "general" or national statistics were per se "inadequate" to show disparate impact based on NTT's hiring policy. Instead, it held that Plaintiffs would merely have to "provide additional allegations to explain why their chosen national statistics are in fact likely to be representative of NTT's qualified applicant pool," or if unable to do so, they could "attempt to identify other publicly available information that could plausibly support a Title VII claim." *Id.* at 212.

### C. *En Banc* Proceedings

On October 5, 2020, Plaintiffs timely filed a petition for rehearing *en banc*. JA202-19. In support of Plaintiffs' petition, *amici curiae* Dr. Megan C. Kurlychek, Dr. Ojmarrh Mitchell, and Dr. Christopher J. Uggen (together "Amici") submitted a brief specifically aimed at addressing and refuting the panel majority's supposition that racial disparities in crime statistics were likely to decrease or

disappear as education levels rise. *See* Amici Curiae's Brief in Support of Plaintiffs-Appellants' Petition for *En Banc* and Panel Rehearing, *Mandala v. NTT Data, Inc.*, No. 19-2308, ECF No. 146 (Oct. 15, 2020) ("Amici Brief").[4] Specifically, Amici surveyed academic research and concluded "*[t]here are no available statistics to show that racial disparities in criminal conviction rates decrease, much less disappear, with increased education.*" Amici Br. at 8-9 (emphasis in original). Instead, Amici reported that African-American men with some college education are *seven times* more likely to be incarcerated than white men of the same educational level, consistent with racial disparities at lower levels of education, and with social science research documenting systemic and institutional bias in the criminal justice system. *Id.* at 9 (citing Bruce Western, *Punishment and Inequality in America* 27 (Russell Sage Foundation, 2006).

On February 23, 2021, this Court denied Plaintiffs' *en banc* petition, over dissents from five judges. The published decisions comprised: (1) a concurrence to the denial drafted by the two majority panel judges, joined by three other judges; (2) a dissent drafted by Judge Pooler, joined by three other judges; (3) a dissent

---

[4]     These three professors have been published in leading criminology journals and are regarded as experts in the field. *See id.* at 1-4.

drafted by Judge Chin, joined by four other judges; and (4) a dissent drafted by Judge Lohier, also joined by four other judges. *See Mandala II*, 988 F.3d 664.[5]

Critical to this appeal, all four opinions—that is, all ten participating judges—acknowledged that the Amici's cited statistics would have been sufficient (or more than sufficient) to address the majority's concerns and to satisfy Plaintiffs' pleading burden. *See id.* at 668 (Sullivan, J., and Nardini, J., concurring with denial of *en banc*) (Plaintiffs could have satisfied standard by alleging "national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain" and further specifying that Amici's data showing elevated rates of imprisonment among educated African-American men are "the very figures that might have rendered Plaintiffs' claims plausible"); *id*. at 671 (Pooler, J., dissenting from denial of *en banc*) (acknowledging persuasive value of Amici's statistics, while also finding that Plaintiffs' original national statistics would have been sufficient); *see also id.* at 672-78 (Chin, J., dissenting from denial of *en banc*) (same); *id.* at 683 (Lohier, J., dissenting from denial of *en banc*) (joining opinions of Judge Pooler and Judge Chin).

In light of this recognition that Plaintiffs' cited statistics, as supported by the Amici Brief, were sufficient to state a claim under Title VII, Judge Pooler—joined

---

[5]     Judges Bianco and Menashi did not join any of the published opinions, and Judge Hall took no part in the consideration or decision of the petition. *Id.* at 664.

by three other Circuit judges—specifically encouraged Plaintiffs to request leave to file an amended complaint under Rule 60.  *Id.* at 671 (Pooler, J., dissenting from denial of *en banc*) ("I encourage . . . Plaintiffs here to move under Rule 60 for relief from the district court's judgment in order to file an amended complaint that includes statistics incorporating the continued racial gaps in conviction rates as education levels rise").

### D. Rule 60 Motion

Consistent with Judge Pooler's suggestion, and in light of the *en banc* opinions indicating that Plaintiffs could meet their pleading burden by adding the specific statistics noted on appeal, on March 21, 2021—less than one month after the Court's *en banc* ruling—Plaintiffs filed a motion to vacate the judgment pursuant to Rule 60(b)(6), and sought leave to file an amended complaint reflecting, inter alia, Amici's additional statistics.  Citing the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178, 182 (1962), and Second Circuit precedent, Plaintiffs argued that the justice-driven approach of Rules 60 and 15 (considering both the interests of finality, and the liberal policies favoring amendment), and this Court's "strong preference" that claims be considered on their merits weighed decisively in favor of vacation.  JA95-96, 104-09 (citing *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (applying *Foman*).

11

Specifically, Plaintiffs argued that vacation was warranted under Rule 60(b)(6) given the "extraordinary circumstances justifying relief." JA103, 109-10. Plaintiffs noted the "highly unusual circumstance" whereby, in clarifying the standard as applied here, all ten judges who wrote or joined *en banc* opinions recognized the significance of the statistics cited in Plaintiffs' proposed amended complaint in supporting a disparate impact claim. JA108-09. Plaintiffs further noted the dissents authored by three separate judges (and joined by a total of five judges, or half of those participating) expressing concerns that Plaintiffs had not had a full and fair opportunity to plead their claims before the district court, and the encouragement of Judge Pooler (joined by three other judges) for Plaintiffs to seek leave to amend, which no judge opposed. JA109-10; *see also Mandala II*, 988 F.3d at 672 (Pooler, J., dissenting from denial of *en banc*) (noting courts should not "shut the door on litigants seeking to vindicate their civil rights"); *id.* at 679-83 (Chin, J., dissenting from denial of *en banc*) (finding that Plaintiffs met their pleading burden, and cautioning against the "dismiss[al] [of] what may be meritorious disparate impact civil rights claims" based on Plaintiffs' informational disadvantage). Plaintiffs also highlighted the critical "importance of Title VII and the rights it protects," by "remov[ing] barriers" to employment and ending the "race-based caste system that defined this country for centuries." JA110 (citing

12

*Mandala II*, 988 F.3d at 672 (Pooler, J., dissenting from denial of *en banc*)); *id.* at 682 (Chin, J., dissenting from *en banc*).

NTT opposed Plaintiffs' motion. On December 6, 2021, the district court denied Plaintiffs' motion.

### III.  The District Court's Ruling

The district court provided two reasons for its denial:

*First*, while Plaintiffs moved for relief under Rule 60(b)(6), the district court construed Plaintiffs' motion as falling under Rule 60(b)(1), which authorizes relief based on "mistake, inadvertence, surprise, or excusable neglect." JA306-07. Because motions predicated on Rule 60(b)(1) must be brought within "a year after the entry of the judgment," the district court found Plaintiffs' motion untimely (as it was filed post-appeal, and thus more than one year after dismissal). JA306-08. As to the "mistake" at issue, the district court found that Plaintiffs erred by appealing its order, rather than immediately seeking to amend, and by failing to meet the pleading standard in their original complaint. JA306-08.

*Second*, the district court held that, even construed as a request for relief under Rule 60(b)(6), Plaintiffs failed to establish "extraordinary circumstances" for essentially the same reasons. The district court found that Plaintiffs made a "free, calculated, deliberate choice[]" to "stand by their original complaint," and appeal dismissal, rather than first seeking leave to amend. JA310 (faulting Plaintiffs for

13

not seeking earlier leave to amend and holding Rule 60 cannot be used to provide relief "from the consequences of [a party's] own . . . 'deliberate choices.'" (quoting *Palacios v. Coca-Cola Co*., 499 F. App'x 54, 56 (2d Cir. 2012) (summary order) (internal citation omitted))). The district court cited no authority for the proposition that a plaintiff should be categorically barred from post-judgment relief as a punishment for challenging the district court's order on appeal, rather than first seeking leave to amend.

The court further held Plaintiffs were precluded from showing "extraordinary circumstances" because the Amici's statistics were "publicly available" at the time Plaintiffs filed their complaint, assuming without factual basis that Plaintiffs were aware of such statistics but intentionally chose not to cite them (or not to amend to add them). JA313 (asserting that Plaintiffs made "a strategic decision" not to amend to add Amici's statistics). This was despite the fact that the Amici's cited statistics were not readily available or easily searchable, and were offered to address a hypothetical concern (regarding conviction rates among individuals with higher levels of education) later raised by the majority panel—a concern which was not specifically addressed by NTT, the district court, or existing cases.[6]

---

[6] Notably, the key study on which Amici relied (finding disparate incarceration rates among college-educated African American men) was taken

14

*Finally*, while noting Rule 15's liberal amendment standard, the district court, in fact, gave no consideration to the applicable Rule 15 factors. Specifically, the court gave no regard to "the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment," or other Rule 15 considerations, including the overarching policy of permitting claims to be fully heard on the merits, as required by the Supreme Court and this Court. *Foman*, 371 U.S. at 182; *Williams*, 659 F.3d at 210 (finding that the district court erred by "overemphasiz[ing] considerations of finality at the expense of the liberal amendment policy embodied in the Federal Rules").

Plaintiffs timely filed their Notice of Appeal on December 30, 2021.

---

from Bruce Western's book, *Punishment and Inequality in America*. Amici Br. at 9 & n.10. Mr. Western is a Professor of Sociology at Columbia University, and his book is not focused on or marketed towards research regarding inequalities among college-educated individuals, but rather on race and mass incarceration generally. *See Punishment and Inequality in America*, Back Cover Copy*,* *https://www.russellsage.org/publications/punishment-and-inequality-america-1* (omitting any mention of disparities among college-educated populations from its description of the book's themes). Moreover, the key statistics that Amici cited from Professor Western's book regarding racial disparities among college educated individuals are not widely known or readily searchable or discoverable by non-academics, including most plaintiffs, particularly at the pleading stage. *Id.*

15

## SUMMARY OF THE ARGUMENT

This appeal presents a simple and legally straightforward question: following the dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6), should Plaintiffs have been permitted to file an amended complaint, when they had never previously been granted leave to amend, relevant Rule 15 factors favor allowing amendment, ten judges on this Court recognized the significance of the supplemental allegations Plaintiffs seek to include in their proposed amended complaint, and four judges specifically encouraged Plaintiffs to move to reopen the case for purposes of amending their complaint and encouraged the district court to grant that motion.

Under governing Second Circuit precedent, the answer must be yes. In denying Plaintiffs' motion to reopen the judgment and file a first amended complaint under Rules 60(b)(6) and 15, the district court abused its discretion and committed error in three fundamental ways. Each requires reversal.

*First*, the district court was required to give due regard to Rule 15 in its analysis, but instead focused exclusively on the need for finality (although this case has not proceeded past the pleading stage), while failing to account for the fact that Plaintiffs had never been given an opportunity to amend their complaint and all relevant Rule 15 factors favor amendment. This precise situation was analyzed by the Court in *Williams v. Citigroup, Inc.*, where the Second Circuit found that a

16

district court's denial of a "postjudgment motion for leave to replead" based on plaintiff's purported failure to seek earlier leave to amend was "not a proper exercise of the district court's discretion, as the district court applied a standard that cannot be reconciled with the Supreme Court's holding in *Foman* [*v. Davis*]." 659 F.3d at 214. Reversal is warranted here as well, for the same reasons articulated by the Court in *Williams*.

*Second*, the district court improperly analyzed Plaintiffs' motion brought under Rule 60(b)(6) as a motion premised on "mistake" or "neglect" under (b)(1), and then used this as a basis to deny it as untimely. This too was error, because the Second Circuit has repeatedly recognized that motions for leave to file an amended complaint post-judgment can be brought under Rules 60(b)(6) and 15, it is not a "mistake" or "neglect" to file an appeal, the district court identified no analogous caselaw to the contrary, and the district court's expansive reading of (b)(1) would improperly close the door on meritorious claims like those presented here.

*Third*, Plaintiffs have presented extraordinary circumstances warranting the reopening of the judgment to allow them to proceed with their case on the merits under Rule 60(b)(6). Highlighting these circumstances, in response to Plaintiffs' petition for *en banc* hearing of the 2-1 affirmation of the district court's order granting NTT's motion to dismiss, ten judges of this Court, in four opinions, agreed that Plaintiffs had identified facts that would permit them to plausibly state

17

a claim for disparate impact race discrimination under Title VII. While these judges pointed a way forward for Plaintiffs' case, amendment on the basis of these facts was not a viable path before appeal because the district court's opinion did not suggest that Plaintiffs could meet their pleading standard using general or national statistics (including those showing that racial disparities in criminal history rates continue as educational attainment increases).

As this Court has held, "in a proper case" the Rule 60(b)(6) analysis should "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Williams*, 659 F.3d at 213. And here, amendment would establish plausibility.

Beyond the precise legal error, this appeal also presents an overarching question about access to justice, and whether the courthouse doors will be closed on Plaintiffs' claims because of a mere pleading technicality. Allowing the district court's ruling to stand would elevate procedure over substantive justice, undercutting the liberal standard for amendment articulated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962).

## ARGUMENT

### I. Standard of Review

The Court reviews a district court's denial of a post-judgment motion for leave to file an amended complaint for abuse of discretion. *Williams*, 659 F.3d at

18

212 (citations omitted). "A district court abuses its discretion when it 'bases its ruling on an incorrect legal standard or a clearly erroneous assessment of the facts.'" *City of New York v. Group Health Inc.*, 649 F.3d 151, 156 (2d Cir. 2011) (quoting *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348 (2d Cir. 2003)); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("An abuse of discretion may consist of an erroneous view of the law, a clearly erroneous assessment of the facts, or a decision that cannot be located within the range of permissible decisions.").

## II.  Legal Standard

Under Rule 60(b), a district court "may relieve a party. . . from a final judgment, order, or proceeding," for the following reasons relevant here:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> ….
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Movants seeking relief under Rule 60(b) should generally show "good cause for the failure to act sooner," and that "no undue hardship be imposed on other parties."  *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987).

"In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality."  *Id.* In particular, when a Rule 60 motion is accompanied by a request for leave to

amend, the district court must evaluate Rule 60 in light of Rule 15's liberal amendment standard, especially where the plaintiffs previously were "never afforded an opportunity to replead." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 144 (2d Cir. 2020) ("*Metzler*"); *see also id.* at 147 (citing cases); *Williams*, 659 F.3d at 213 ("postjudgment motions for leave to replead *must* be evaluated with *due regard* to *both* the value of finality *and the policies embodied in Rule 15*" (emphasis supplied)); *cf. Foman*, 371 U.S. at 182 (post-judgment motions to amend should be viewed in light of the Federal Rules' "principle that the purpose of pleading is to facilitate a proper decision on the merits" (internal citation omitted)).

Rule 60(b)(6) is a catch-all provision that is properly invoked "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (citing *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986). Rule 60(b)(6) applies "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *Metzler*, 970 F.3d at 143. "[I]t constitutes a grand reservoir of equitable power to do justice in a particular case[,]" *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (internal citation omitted), "which in a proper case,

20

is to be 'liberally applied[,]'" *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977) (quoting 7 Moore's Federal Practice P. 60.27(2), at 352 (2d ed. rev. 1975)).

In determining whether extraordinary circumstances exist, courts may consider various factors including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988). Because of the focus on substantial justice, "courts view Rule 60(b) motions more favorably where, as here, granting the motion will permit an adjudication on the merits." *Pettiford v. City of Yonkers*, No. 14 Civ. 6271, 2018 WL 3364394, at *3-4 (S.D.N.Y. July 10, 2018) (internal citation omitted); *see also Williams*, 659 F.3d at 213.

"[A]ll doubts should be resolved in favor of those seeking relief under Rule[] . . . 60(b)[.]" *Savis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983) (collecting cases).

## III.    The District Court Applied an Incorrect Legal Standard.

Here, the district court committed legal and factual error by failing to give due regard to Rule 15 and improperly converting Plaintiffs' Rule 60(b)(6) motion into a Rule 60(b)(1) motion, and then denying it as untimely. Each of these errors independently requires reversal.

**A. Supreme Court and Second Circuit Precedent Establish It Is an Abuse of Discretion to Deny Post-Judgment Relief Solely Based on the Purported Failure to Seek Earlier Leave to Amend.**

An analysis of the district court's error begins with the Supreme Court's ruling in *Foman v. Davis*. In *Foman*, the district court granted a motion to dismiss and entered judgment, and the plaintiff appealed that decision while also filing motions to vacate the judgment and amend the complaint, which the district court also denied, and which the plaintiff also appealed. 371 U.S. at 179. While the Court of Appeals affirmed, *id.* at 180-81, the Supreme Court reversed, focusing on Rule 15(a)'s "mandate" that amendment "shall be freely given when justice so requires," and explaining that if the plaintiff's underlying allegations "may be a proper subject of relief, [t]he[y] ought to be afforded an opportunity to test . . . [their] claim on the merits" absent "undue delay, bad faith or dilatory motive . . . ." *Id.*

In so holding, the Supreme Court implicitly found that the failure to seek leave to amend before (or even immediately after) the issuance of an order of dismissal is *not* a valid reason to deny amendment, even in the post-judgment context. *Id.* at 182 (finding that a district court abused its discretion in denying leave to amend under Rule 59 "without any justifying reason," despite fact that plaintiff failed to seek amendment prior to moving for post-judgment relief); *Williams*, 659 F.3d at 214 (Under *Foman*, the failure to seek amendment prior to

22

entry of judgment does not constitute "undue delay" or any other "justifying reason" for denying amendment).

Citing *Foman*, the Second Circuit found in *Williams v. Citigroup, Inc.*, that a district court abused its discretion in denying plaintiff's "postjudgment motion for leave to replead" under Rule 59(e) and 60(b) based on plaintiff's failure to seek earlier leave to amend. 659 F.3d at 214. There, the plaintiff moved for relief under Rule 59(e) and Rule 60(b) after the district court dismissed her claim. 659 F.3d at 211. Like Plaintiffs, Williams sought to reopen the judgment and amend her complaint to address certain pleading defects. *Id.* at 212. The district court denied her motion for the same two reasons adopted by the district court here, namely: (i) that she "failed to request an opportunity to replead in the first instance" and (ii) that the additional facts she identified were presumably available when she filed her original complaint. *Id.* The Second Circuit reversed, finding that "postjudgment motions for leave to replead *must* be evaluated with due regard to *both* the value of finality *and the policies embodied in Rule 15*," and that the district court's standard "cannot be reconciled with the Supreme Court's holding in *Foman*," which makes "unmistakably clear" that plaintiffs have "*[no] obligation* to seek leave to replead" either before or immediately after the issuance of an order granting dismissal. *Id.* at 214 (emphasis supplied).

23

*Williams* does not stand alone in articulating these governing principles. In *Metzler*, the Second Circuit emphasized again that Rule 60 must be evaluated in light of Rule 15's liberal amendment standard, especially when the plaintiffs previously were "never afforded an opportunity to replead." 970 F.3d at 144. The Court went on to explain that under *Foman*, "it is an abuse of discretion" not to grant a post-judgment motion for leave to amend (there, in the Rule 59(e) context) "to prevent a 'manifest injustice,'. . . when the plaintiff was never given an opportunity to replead in the first place." *Id.*

This holding is also consistent with *Indiana Public Retirement Systems v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016) ("*SAIC*"), where the Court reversed denial of a Rule 59(e) and Rule 60(b) motion, finding that plaintiffs' proposed amendment would not have been "futile" and that denial was otherwise unwarranted, even though the plaintiff had declined the district court's express invitation to further amend prior to issuing its final order of dismissal. *Id.* at 91, 96; *see also Branum v. Clark*, 927 F.2d 698, 705-07 (2d Cir. 1991) (reversing denial of post-judgment relief and leave to amend where district court "fail[ed] to give any consideration to [the] prejudice" to plaintiff "in connection with the Rule 60(b) motion," and noting that "court[s] should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); *cf. Oliver Sch., Inc. v. Foley*, 930 F.2d 248,

24

253 (2d Cir. 1991) (Where "the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course").

As discussed in *Metzler*, despite their differences (including that *Foman* was decided under Rule 59, while *Williams* and *SAIC* were decided under Rules 59 and 60, and that in *SAIC* plaintiffs had been given a prior opportunity to amend), all three opinions "are consistent." *Metzler*, 970 at 145. In all three, the "district court dismissed all the plaintiffs' claims . . . with prejudice, prohibiting amendment without providing a justification" (where the failure to amend earlier is not a "justifying reason" for denying post-judgment relief), leaving "plaintiffs . . . unable to proceed except by motion for relief from the judgment." *Id.* at 144-45. Under these cases, the district court's dismissal of Plaintiffs' complaint with prejudice, and their Rule 60 motion without any "justifying reason," was reversable error.

## B. The District Court Failed to Give Due Regard to Rule 15.

The district court failed to account for this case law and, thus, did not give "due regard" to Rule 15 in its Rule 60(b)(6) analysis, in two related ways. First, the district court did not give Plaintiffs a prior opportunity to amend. Second, the district court did not assess Rule 60(b)(6) in light of Rule 15 considerations.

### i. Error 1: Plaintiffs Had No Prior Opportunity to Amend.

To start with, the district court erred in denying Plaintiffs' motion because Plaintiffs chose to appeal before formally seeking leave to amend their complaint. *See* JA310, 312. The law is clear that the failure to seek prior amendment is not, standing alone, a proper reason to deny post-judgment leave to amend.[7] *See, e.g.*, *Foman*, 371 U.S. at 182; *Williams*, 659 F.3d at 214; *Metzler*, 970 F.3d at 144-45; *see also supra* Argument, § III(A).[8] Rather, Plaintiffs' *reasonable* litigation choices, including the decision to appeal prior to seeking leave to amend, should not foreclose post-judgment relief. Compare *LeBlanc v. Cleveland*, 248 F.3d 95, 98, 101 (2d Cir. 2001) (reversing denial of motion for relief and motion to amend under Rule 60(b)(6) *even after plaintiff had previously appealed dismissal* (and

---

[7]    The district court found that the Second Circuit does not have a rule "that all plaintiffs are guaranteed the right to amend their pleadings at least once in the post-judgment context." JA304. Whether or not that reasoning is accurate, it is irrelevant to the error presented here, which is that the district court improperly found that finality interests were dispositive because Plaintiffs did not seek prior leave to amend. The district court's statement also ignores that the Rule 60(b)(6) analysis should "in a proper case . . . take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Williams*, 659 F.3d at 213. Here, the district court's failure to grant amendment is exacerbated by the fact that Plaintiffs' proposed amendment would establish a plausible claim for disparate impact discrimination. *Id.* at 214; *see also infra* Argument, § IV.

[8]    *Accord State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.").

lost), and finding "extraordinary circumstances" where defendant would not be prejudiced and plaintiff would otherwise "be left without a remedy"), *and Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) (noting that "litigant faced with an unfavorable district court judgment must appeal that judgment within the time allotted" and "[e]ither before *or after* filing his appeal, the litigant *may also file a Rule 60(b) motion for relief* with the district court") (emphasis supplied), *with* JA313-14.

While the district court cited cases standing for the principle that Rule 60(b) relief may be unavailable when the moving party deliberately chooses *not to appeal*, and then belatedly seeks to relitigate the merits via Rule 60, that is not the situation presented by this appeal. *See* JA313-14 (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950) (relief under Rule 60(b) was unwarranted where movant "made a considered choice not to appeal"); *Palacios*, 499 F. App'x at 56 (summary order) (same, where "plaintiffs declined to appeal the dismissal of their petition . . . , despite having a strong, good-faith basis for such an appeal"); *Simone v. Prudential Ins. Co. of Am.*, 164 F. App'x 39, 40 (2d Cir. 2006) (summary order) (same, where movant sought Rule 60(b)(6) relief as a substitute for an appeal after the "time to appeal the judgment had expired")); *see also Cruickshank & Co. v. Dutchess Shipping Co.*, 805 F.2d 465, 468 (2d Cir. 1986) (same).

Similarly, the district court's citation to various moments in the history of the motion to dismiss briefing when Plaintiffs purportedly should have sought

27

leave to amend, JA310-13, ignores this case's unique procedural history. Through the appeal process, this Court clarified what specific statistical allegations were required to state a plausible claim, and before that point the district court's opinion did not reasonably suggest that those statistics (or other national or "general" population statistics) could meet Plaintiffs' plausibility burden. *See infra* Argument, § IV. Plaintiffs could not anticipate, prior to appeal, that the allegations this Court identified would establish a plausible claim of disparate impact discrimination under the district court's order.

Even so, the district court's underlying factual finding that Plaintiffs failed to "seek leave to amend their complaint," JA310, 312, is also erroneous given that Plaintiffs noted in their motion to dismiss opposition brief that, if the Court credited NTT's arguments, amendment could cure the issue. *See, e.g.*, *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (explaining that "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend" (collecting cases); *see also* JA75. This factual error is the basis for the district court's holding, and thus provides an independent basis for reversal.

28

### ii. Error 2: The District Court Failed to Properly Assess Rule 60(b)(6) in Light of Rule 15.

Along with improperly faulting Plaintiffs for their purported failure to seek earlier leave to amend, the district court also failed to otherwise give meaningful consideration to "the policies embodied in Rule 15," which it must do when evaluating a Rule 60 motion. *Metzler*, 970 F.3d at 143 (quoting *Williams*, 659 F.3d at 213); *see also Williams*, 659 F.3d at 213 ("postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15"); *cf. Foman,* 371 U.S. at 181-82 (explaining that post-judgment motions to amend should be viewed in light of the Federal Rules' "principle that the purpose of pleading is to facilitate a proper decision on the merits") (citation and internal quotation marks omitted).

Here, the district court focused exclusively on finality, asserting that "[t]here must be an end to litigation someday," despite the fact that the case had never proceeded past the pleading stage. *See* JA314.[9] Having determined that Plaintiffs

---

[9] Underscoring the futility point, the district court's decision to dismiss with prejudice itself strongly indicates that it viewed amendment as futile and would have rejected any such prior request. *See Pena v. Recore*, 12 F. App'x 62, 63 (2d Cir. 2001) (noting leave to file an amended complaint is normally granted "unless an amendment would be futile"); *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (same).

29

were precluded from relief under Rule 60 for failure to seek earlier amendment, the district court ended its analysis without considering any of the countervailing Rule 15 factors. JA313; *cf. Williams*, 659 F.3d at 210 (reversing denial of post-judgment relief when district court applied "standard that overemphasize[s] considerations of finality at the expense of the liberal amendment policy embodied in the Federal Rules of Civil Procedure").

To be sure, the district court recited the need to give "due regard" to Rule 15, JA313, but this is not the same as properly accounting for its requirements. Rule 15 mandates that leave to amend be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this standard, courts permit amendment absent a "good reason" warranting denial, namely undue delay, bad faith, "repeated failure to cure deficiencies by amendments previously allowed," undue prejudice or futility. *Foman*, 371 U.S. at 182;[10] *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (same). And, here:

- *There was no undue delay.* Plaintiffs diligently and continuously pursued their claims both in the trial court and on appeal, and filed their Rule 60 motion less than one month after the appeal mandate issued.

---

[10] Highlighting the lack of analysis, the district court did not *cite* (let alone analyze) *Foman* except to discount Plaintiffs' recitation of the legal standard. *See* JA303.

- *Plaintiffs acted consistently, in good faith and without dilatory motive.*  Plaintiffs briefed the motion to dismiss without seeking any extension,[11] timely appealed, swiftly moved to reopen the case, and timely appealed a second time.

- *Plaintiffs were given no opportunity to amend their complaint.  See Metzler*, 970 F.3d at 142 (The "'liberal spirit of Rule 15' . . . ensur[es] plaintiffs at least one opportunity to replead[.]" (quoting *Williams*, 659 F.3d at 213-14)).

- *NTT faces no undue prejudice from amendment.*  NTT has had notice of this case since it was served with the original complaint, and the case has not proceeded past the pleading stage.  NTT has not lost any meaningful opportunity to preserve or seek discovery, or to fully defend itself against Plaintiffs' claims.  *LeBlanc*, 248 F.3d at 100 (finding no undue prejudice when defendant had notice of complaint from date filed, and amendment would not require defendant "to incur significant additional expenses to prepare for trial").  In turn, the only burden NTT has faced is having to defend against Plaintiffs' claims by motion practice (*i.e.*, a burden inherent in every litigation).  The fact that "amendment will require the expenditure of additional time, effort, or money" does not, by itself, constitute "undue prejudice." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993)).[12]

---

[11]    Underscoring their diligence, Plaintiffs moved to pursue discovery while the motion to dismiss was pending, which NTT opposed and the Court denied.  *See Mandala v. NTT Data, Inc.*, No. 18 Civ. 6591, ECF No. 21 (W.D.N.Y. April 26, 2019) (Pls.' Mot. to Compel Rule 26(f) Conference); *see also* JA2-3.

[12]    Underscoring the lack of prejudice to NTT from *this* case, the company would still have to defend against the savings action case brought by Plaintiff Mandala and the New York Class in New York State court.  However, Plaintiff Barnett and other class members who do not reside in New York are unable to benefit from that action.

- *Plaintiffs suffer real prejudice if the district court is not reversed.* If the district court is affirmed, Plaintiff Charles Barnett and all putative Title VII class members will be left without a remedy for a claim that the Second Circuit has indicated can survive a motion to dismiss. *See LeBlanc*, 248 F.3d at 100-01 (weighing defendant's lack of undue prejudice against real prejudice to plaintiff she would "be left without a remedy if the motion were not granted").

- *Amendment is not futile.* A majority of the active judges on the Second Circuit have recognized the significance of the specific facts pleaded in Plaintiffs' proposed First Amended Class Action Complaint with respect to Plaintiffs' claim for disparate impact discrimination under Title VII. *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Williams*, 659 F.3d at 213.

While the Rule 15 considerations point decisively toward reopening the case to permit amendment, the district court was required, at a minimum, to actually weigh them against any finality interest. *See Kotlicky*, 817 F.2d at 9 ("[A] court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality."). By focusing exclusively on the latter, without evaluating or weighing the former, the district court failed to consider Rule 15 and the policies it embodies. *See also Buck v. Davis*, 137 S. Ct. 759, 779 (2017) (rejecting exclusive focus on finality because "[t]he 'whole purpose' of Rule 60(b)

'is to make an exception to finality.'" (quoting *Gonzalez v. Crosby*, 545 U.S. 524,

529 (2005))).[13]

### C. The District Court Erred by Evaluating Plaintiffs' Rule 60(b)(6) Motion Under the Standard for Rule 60(b)(1) Motions.

The district court committed further legal error by holding that Plaintiffs

brought "nothing more than a late Rule 60(b)(1) motion" because it was

purportedly premised on "mistake, inadvertence and neglect . . . ."  JA307-08.

This holding is inconsistent with Second Circuit precedent and Plaintiffs' Rule

60(b)(6) arguments for four reasons.

*First*, Second Circuit caselaw permits a plaintiff to seek post-judgment leave

to amend under Rules 60(b)(6) and 15—especially where the complaint has not

been previously amended—and it was not a "mistake" for Plaintiffs to do so here.

*See LeBlanc*, 248 F.3d at 100-01 (reversing denial of motion for relief and motion

to amend under Rule 60(b)(6) and Rule 15 where plaintiff was never afforded prior

opportunity to amend); *see also SAIC*, 818 F.3d at 92-93, 97 (analyzing post-

judgment request to file second amended complaint under Rule 60(b)(6) and Rule

15 and reversing district court's determination that amendment to add new facts

---

[13]    The district court was wrong to suggest that Plaintiffs sought to have the
Rule 15 standard apply without consideration of Rule 60(b)(6).  JA304.  Plaintiffs
argued that Rule 60(b)(6) must be considered in light of Rule 15.  *See, e.g.*, JA96,
288.  This is consistent with *Metzler*.  970 F.3d at 145-46.

would be futile); *Branum*, 927 F.2d at 705-07 (reversing denial of post-judgment relief and leave to amend under Rule 60(b) and Rule 15 where plaintiff was never previously given an opportunity to amend); *cf. Metzler*, 970 F.3d at 147-48 (analyzing request to amend under Rule 60(b)(6) but denying due to lack of extraordinary circumstances and prior opportunity to file three complaints).[14]

*Second*, the district court defined "mistake, inadvertence and neglect" expansively to foreclose Plaintiffs' claims in a way that is inconsistent with Rule 60(b)(6) *and* Rule 60(b)(1) jurisprudence, and this Court's interpretation of Rules 60(b) and 15. *See supra* Argument, § II. This is illustrated by the district court's failure to identify *any* analogous (b)(1) authority. *See* JA306-08. The only case the district court cited in support of its reasoning is *Stevens v. Miller*, 676 F.3d 62 (2d Cir. 2012), which itself provides an illustrative contrast. In *Stevens*, the Second Circuit found that a motion by the government to reopen a decision that granted habeas relief more than a year after it was issued should be analyzed under 60(b)(1) and not 60(b)(6) because of the "significant" errors committed by the state—including its failure to check the docket sheet and its failure to file a timely appeal of the decision it sought to vacate under Rule 60. *Id.* at 68. Those errors

---

[14]    *Williams* did not specify which Rule 60(b) prong it was decided under, *see* 659 F.3d at 211, 213, but it was cited with approval by *Metzler* when analyzing Second Circuit cases for when leave to amend is properly granted post-judgment, 970 F.3d at 143-46.

included that "the State admitted that it was 'negligent . . . ,' noted that it 'did make some mistakes,' and suggested that it was partly to blame no fewer than five times." *Id.* As such, the Court concluded that the motion was solely "premised on [the state's] own mistake, inadvertence, surprise, and neglect." *Id.* at 66-67.[15]

*Stevens* is entirely distinguishable from the facts in this case. In a broad sense, any party whose appeal is dismissed may be considered "mistaken" in some way, but this doesn't mean they should always be precluded from seeking post-judgment relief, or that they have made a mistake within the meaning of Rule 60(b)(1). Litigation choices are not necessarily "mistakes" (or "neglect") simply because they do not always succeed. *See LeBlanc*, 248 F.3d at 100 (finding that the plaintiff's "decision to proceed initially under admiralty jurisdiction" did not preclude later amendment to establish diversity jurisdiction because it was "reasonable" and "in the interest of judicial economy" for the plaintiff to wait for a ruling on the existence of admiralty jurisdiction prior to seeking amendment). In the district court's view, any plaintiff who appeals a ruling in good faith, but whose appeal is denied, will never be able to seek amendment, regardless of how

---

[15]    *See also, e.g.*, *Ritchie Cap. Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ 3494, 2016 WL 6952248, at *3-4 (S.D.N.Y. Nov. 28, 2016) (construing Rule 60(b)(6) motion under Rule 60(b)(1) where motion resulted from movants having "erred repeatedly" including by filing an appeal after voluntarily dismissing their claims without prejudice and then waiting over a year to seek relief under Rule 60(b)).

35

exceptional the circumstances may be, because an unsuccessful appeal could be considered "mistaken" and appeals often take more than a year. This reading of Rule 60(b)(1) and 60(b)(6) cannot be reconciled with the case law or the Rule's purpose: to do justice, where justice is warranted. *See Foman*, 371 U.S. at 182 ("decisions on the merits" should not be "avoided" based on technicalities, given that "the purpose of pleading is to facilitate a proper decision on the merits.").

*Third*, the district court misconstrued Plaintiffs' motion. Plaintiffs did not seek to rehash or relitigate issues already decided by the district court (or this Court), and did not seek to undo any "mistakes" supposedly committed in the past; they are simply seeking the opportunity to file an amended complaint, an opportunity that plaintiffs are typically afforded but were not given here. The liberal amendment rules exist because plaintiffs typically need to amend their complaints to clarify or bolster the facts and theories alleged as the case unfolds. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1473 (3d ed. 2021) ("Rule 15(a) . . . reinforces one of the basic policies of the federal rules—that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits."); *cf. Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (under Rule 15's "liberal" and "permissive" standard, leave to amend should typically be granted absent "undue delay, bad faith, dilatory motive, [or] futility").

Here in particular, it was not a "mistake" for Plaintiffs to appeal the district court's decision before moving to amend—the decision required statistics that Plaintiffs could not reasonably have obtained without discovery—rendering amendment futile and appeal the most efficient way to pursue a remedy for the Plaintiffs. *See infra* Argument, § IV. Similarly, while Plaintiffs lost their initial appeal, Plaintiffs did not exhibit "mistake, inadvertence and neglect" within the meaning of Rule 60(b)(1) in their decision to argue that the national statistics they identified were sufficient to plead disparate impact discrimination. *See id.* The thorough dissent to the majority opinion, and additional dissents joined by half of the participating *en banc* judges (five out of ten), recognizing the relevance of Plaintiffs' statistics under the relevant standard, reflect the fact that Plaintiffs had a colorable and potentially merit-worthy argument. *See supra* Statement of Case, §§ II(B)-(C); *Mandala II*, 988 F.3d at 683 (Lohier, J., dissenting from denial of *en banc*) ("Although I have very rarely voted to proceed in banc, for the reasons expressed by Judge Chin and Judge Pooler in their opinions dissenting from the denial of rehearing in banc, I dissent.").

*Fourth*, and perhaps most fundamental, the district court improperly focused on Plaintiffs' conduct, when, under this Court's precedent, the district court should have allowed Plaintiffs an opportunity to amend, but did not—especially when ten

*en banc* judges recognized the relevant of the allegations that Plaintiffs have assembled. *E.g.*, *Williams*, 659 F.3d at 213-14; *see also infra* Argument, § IV.

## IV. Plaintiffs Have Established "Extraordinary Circumstances."

Finally, Plaintiffs established a strong case for extraordinary circumstances that justifies reopening the judgment. The district court's rejection of Plaintiffs' showing "cannot be located within the range of permissible decisions." *Williams*, 659 F.3d at 212 (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)); *see also Metzler*, 970 F.3d at 145 (discussing "consisten[cy]" in precedent reversing denials of amendment in post-judgment context despite procedural differences, where district courts previously dismissed claims with prejudice and prohibited amendment "without providing a justification" (and where the failure to amend earlier is not a "justifying reason" for denying relief)).

**Procedural history.** At the threshold, Plaintiffs have established extraordinary circumstances in light of the highly unique procedural history of this case, wherein: (1) the district court granted NTT's motion to dismiss with prejudice, despite Plaintiffs' request for leave to amend, thereby foreclosing Plaintiffs from even one chance to amend; (2) all ten judges who wrote or joined opinions at the *en banc* stage recognized the relevance of Plaintiffs' supplemental statistics in addressing the majority panel's concern regarding education levels; (3) the district court's decision gave no indication that those statistics were relevant or

38

otherwise suggested that adding them (or indeed, any other national statistics) could cure the identified pleading deficiency; and (4) four Second Circuit judges specifically encouraged Plaintiffs to move for leave to reopen the case for purposes of amending their Complaint (which no Second Circuit judge opposed). *See supra* Statement of the Case, §§ II(A)-(C).

Here, the concurrence to the denial of Plaintiffs' *en banc* petition (drafted by two judges, and joined by three others), found that Plaintiffs may well have met the applicable standard by citing "additional national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain." *See Mandala II*, 988 F.3d at 688 (Sullivan, J., and Nardini, J., concurring with denial of *en banc*). The concurrence further found that Amici's statistics (including data showing that college-educated Black men are seven times more likely to be imprisoned that their white counterparts) are "the very figures that might have rendered Plaintiffs' claims plausible." *Id*.[16]

---

[16] While the dissenting judges would have permitted Plaintiffs' Title VII claim to proceed on their original complaint, they agreed that Amici's statistics would further bolster Plaintiffs' allegations. *See id*. at 671 (Pooler, J., dissenting from denial of *en banc*) ("We know that racial disparities in conviction and arrest rates will persist across all education levels. Indeed, as set forth in another amicus brief, the data is quite clear on this point."); *see also id.* at 672-82 (Chin, J., dissenting from denial of *en banc*) (explaining that "it is certainly plausible—even probable, as explained below—that the racial disparity in conviction rates does not dissipate with education"); *id.* at 683 (Lohier, J., dissenting from denial of *en banc*) (adopting dissents of Judge Chin and Judge Pooler).

Because "the underlying facts or circumstances relied upon by . . . [P]laintiff[s] may be a proper subject of relief, [t]he[y] ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182; *see Williams*, 659 F.3d at 213 (explaining that it can be appropriate for a district court to "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment" under Rule 60(b)); *Marrero Pichardo*, 374 F.3d at 54 (finding it "significant" in reversing denial of Rule 60(b)(6) motion that movant's claim was "virtually certain to succeed if considered on appeal").

At the same time, the district court gave no clear indication that statistics regarding educational levels (or any statistics other than those reflecting NTT's qualified applicant pool) could cure the pleading deficiency, and thus Plaintiffs did not have a viable path to successfully amending their complaint before the appeal. *See generally* JA88-94. While the district court attempts to fault Plaintiffs for not including statistics regarding education levels earlier, because they were publicly available when Plaintiffs filed their original complaint, JA313 (suggesting that plaintiffs could have pled such statistics in their original complaint, or sought earlier leave to amend, "but made a strategic decision not to"), those statistics were not readily discoverable, and in any event, would have been subject to the same criticism as Plaintiffs' cited statistics (because they, too, fail to "indicate whether the individuals in the [] population cited shared qualifications" necessary for the

positions Plaintiffs sought). JA93. Moreover, this Court's precedent is clear that a plaintiff does not need to explain why they did not include facts previously to be granted post-judgment leave to amend. *See, e.g.*, *Williams*, 659 F.3d at 212, 214 (reversing district court that reasoned that plaintiff "fails to indicate any reason why she was justifiably ignorant of the facts set forth in counsel's declaration").

Contrary to the district court's finding, there is no requirement under the Federal Rules or this Court's precedent that plaintiffs must allege all potentially relevant "publicly available" facts or arguments in their initial complaint. This is for good reason, as plaintiffs facing expiring statutes of limitation and the threat of lost or destroyed evidence must often file complaints under time pressure, and without access to complete information. Rule 15 reflects this reality, providing that plaintiffs should ordinarily be granted liberal leave to amend absent a showing of prejudice, undue delay or futility. *See* Fed. R. Civ. P. 15(a). Especially in the context of a disparate impact claim, the pleading standard to gain access to court should not require a party to cite expert studies that were not widely known or readily searchable or discoverable by non-academics in the first instance without opportunity to amend. *See supra* Statement of Case, § II(C) & n.6.

**The equities.** As discussed above, the equities also strongly favor Plaintiffs' establishment of exceptional circumstances in several additional ways, including because: (i) Plaintiffs will suffer undue prejudice if the district court's order is not

41

reversed because Plaintiff Barnett and putative Title VII class members outside of New York will be left without a remedy; (ii) NTT will face no legitimate prejudice if the district court's order is reversed beyond having to litigate a potentially meritorious claim on the merits; and (iii) Plaintiffs have moved promptly to seek this relief. *See supra* Argument, § III(B)(ii).

**Access to justice.** Finally, the denial of Plaintiffs' motion creates the real risk that NTT will evade Plaintiffs' nationwide civil rights claims, "undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 863-64. Courts should be especially reticent to "shut the door on litigants seeking to vindicate their civil rights . . . especially in these troubled times," and here Plaintiffs bring Title VII claims of race discrimination, seeking to address the impact of mass-incarceration on the economic opportunities of African Americans in this country. *Mandala II*, 988 F.3d at 672 (Pooler, J., dissenting from denial of *en banc*); *id.* (Chin, J., dissenting from denial of *en banc*) (noting concern that "meritorious civil rights cases will not be reached on the merits," particularly given "the implications for the struggle for racial equality that Title VII reflects, as the nation continues to address the issue of systemic racism"); *id.* at 683 (Lohier, J., dissenting from denial of *en banc*) (asserting that "a pleading is the key to the courthouse door," and that when claims cannot be pled, the "substantive rights that reside just behind the door wither and die"); *cf. Albemarle Paper Co. v. Moody*,

42

422 U.S. 405, 421 (1975) (explaining Congress' intent to provide Title VII

plaintiffs with "the most complete relief possible") (internal citation and quotation

omitted).

As the Supreme Court cautioned in *Foman*:

It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' *Conley v. Gibson*, 355 U.S. 41, 48, 78 S. Ct. 99, 103, 2 L.Ed.2d 80.

371 U.S. at 181-82.

The Supreme Court's statement about the importance of a liberal

amendment standard is all the more relevant today, given the need for plaintiffs to

meet the higher pleading standard of plausibility. Rule 15 (here, in conjunction

with Rule 60(b)(6)) is the equitable cross-check on a district court's discretion to

dismiss and ensures that the courthouse doors are not closed on potentially

meritorious claims.[17]

---

[17] *Cf. Mandala II*, 988 F.3d at 668 (Sullivan, J., and Nardini, J., concurring) ("As a result, we see no reason to believe that the panel majority opinion will become 'a dangerous precedent' that shuts the courthouse door to disparate impact claims. *Post*, Chin, J., dissenting from denial of rehearing *en banc*, at 683. The fact that such publicly available statistics exist indicates that there is ample factual material on which future litigants may rely to plead plausible disparate impact claims.").

43

Under these extraordinary circumstances, the district court's denial constituted abuse of discretion.

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Second Circuit reverse the District Court, hold that Plaintiffs are entitled to relief and leave to file their amended complaint under Rule 60(b)(6) and Rule 15, and remand this case for further proceedings.

Dated: March 4, 2022
      New York, New York

Respectfully submitted,

By: */s/ Christopher M. McNerney*
**OUTTEN & GOLDEN LLP**
Ossai Miazad
Christopher M. McNerney
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**OUTTEN & GOLDEN LLP**
Moira Heiges-Goepfert
One California, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

**NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.**
Samuel Spital
Rachel M. Kleinman
Tiffani Burgess
40 Rector St., Fifth Floor
New York, NY 10006
Telephone: (212) 965-2200

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of this Circuit's

Local Rule 32.1(a)(4)(A) because it contains 10,450 words.

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

it has been prepared in a proportionally spaced typeface using Microsoft

Word, and is in Times New Roman, 14-point font.


Dated: March 4, 2022                              Respectfully submitted,
            New York, New York


                                                  /s/ Christopher M. McNerney
                                                  Christopher M. McNerney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 4, 2022, I uploaded an electronic copy of the foregoing Brief for the Plaintiffs-Appellants to the Court's electronic filing system, thereby electronically serving it upon the following:

JACQUELINE PHIPPS POLITO
ABIGAIL L. GIARRUSSO
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Second Floor
Fairport, NY 14450
(585) 203-3400
jpolito@littler.com
agiarrusso@littler.com

*Attorneys for Defendant-Appellee NTT Data, Inc.*

Six (6) hard copies of the foregoing Brief for the Plaintiffs-Appellants will be sent by hand delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
40 Foley Square
New York, NY 10007
(212) 857-8500

/s/ Christopher M. McNerney
Christopher M. McNerney