# 22-0004-cv

## United States Court of Appeals

### *for the*

## Second Circuit

GEORGE MANDALA, CHARLES BARNETT,
individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

– v. –

NTT DATA, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

JACQUELINE P. POLITO
ABIGAIL L. GIARRUSSO
LITTLER MENDELSON, P.C.
*Attorneys for Defendant-Appellee*
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
(585) 203-3400

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee NTT DATA, Inc. hereby states, pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, that it is 100% directly owned by NTT Data International L.L.C., a Delaware limited liability company ("NDI"). NDI is 100% directly owned by NTT DATA Corporation, a Japanese corporation, which is listed on the First Section of the Tokyo Stock Exchange.

# TABLE OF CONTENTS

**PAGE**

JURISDICTIONAL STATEMENT ............................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW ................1

STATEMENT OF THE CASE ..................................................................2

SUMMARY OF THE ARGUMENT ..........................................................11

ARGUMENT ........................................................................................14

  I.  This Court Should Affirm the District Court's December 6, 2021 Decision Denying Plaintiffs-Appellants' Motion Under Rule 60(b) in All Respects ...14

    A.  The District Court Applied the Correct Legal Standard ............................15

    B.  The District Court Did Not Abuse its Discretion by Holding that Plaintiffs-Appellants' Motion to Vacate Judgement Was Untimely .........................20

      i.  The District Court Properly Held that Plaintiffs-Appellants' Motion Was an Untimely Rule 60(b)(1) Motion ......................................................20

      ii.  Even if Plaintiffs-Appellants' Motion Was Properly Brought Under FED. R. CIV. P. 60(b)(6), Their Motion Was Still Untimely ...........................23

    C.  The District Court Did Not Abuse its Discretion by Holding that Plaintiffs-Appellants Failed to Demonstrate Extraordinary Circumstances ...............30

  II.  Because the District Court's December 6, 2021 Decision Should Be Affirmed, this Court Need Not Address Plaintiffs-Appellants' Additional Arguments, but Even If Considered, Plaintiffs-Appellants Are Not Entitled to Relief from Final Judgment ...............................................................38

    A.  Plaintiffs-Appellants Requested Leave to Amend Only After Undue Delay ......................................................................................39

    B.  Plaintiffs-Appellants are Acting in Bad Faith and With Dilatory Motive ..40

    C.  Plaintiffs-Appellants' Proposed Amendments are Futile............................41

CONCLUSION ....................................................................................45

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abate v. Fifth Third Bank*,
  No. 13-CV-9078 (VSB), 2019 WL 2409792 (S.D.N.Y. June 6,
  2019) ................................................................................................16, 35, 37

*Acequip Ltd. v. American Engineering Corp.*,
  315 F.3d 151 (2d Cir. 2003) ..............................................................23

*Anthony v. City of New York*,
  No. 00 CIV. 4688 (DLC), 2002 WL 731719 (S.D.N.Y. Apr. 25,
  2002) ................................................................................................29

*Ashcroft v. Iqbal*
  (556 U.S. 662 (2009)) ........................................................................6

*Axar Master Fund, Ltd. v. Bedford*,
  806 F. App'x 35 (2d Cir. 2020) ....................................................32, 39

*Berman v. Parco*,
  986 F. Supp. 195 (S.D.N.Y. 1997) ....................................................40

*Branum v. Clark*,
  927 F.2d 698 (2d Cir. 1991) ..............................................................17

*Brook v. Simon*,
  No. 17 CIV. 6435 (GBD), 2018 WL 6518855 (S.D.N.Y. Nov. 27,
  2018) ................................................................................................42

*Brooks v. Doe Fund, Inc.*,
  No. 17CV3626PKCLB, 2020 WL 5706451 (E.D.N.Y. Sept. 24,
  2020) ............................................................................................37, 40

*Brown v. Burnside*,
  109 F.R.D. 412 (E.D.N.Y. 1986) .......................................................22

*In re Buckskin Realty, Inc.*,
  No. 19-3828-BK, 2021 WL 1081480 (2d Cir. Mar. 22, 2021) ............15, 38, 39

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

*Burch v. Pioneer Credit Recovery, Inc.*,
    551 F.3d 122 (2d Cir. 2008) .......................................................................39, 42

*Cody, Inc. v. Town of Woodbury*,
    179 F.3d 52 (2d Cir. 1999) ..............................................................................15

*DePasquale v. DePasquale*,
    No. 12-CV-2564 RRM MDG, 2013 WL 4010214 (E.D.N.Y. Aug.
    5, 2013), *aff'd*, 568 F. App'x 55 (2d Cir. 2014) ...................................35

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    466 F. Supp. 2d 560 (S.D.N.Y. 2006) ..............................................................30

*East End Eruv Ass'n, Inc. v. The Village of Westhampton Beach*,
    No. CV 11-213 AKT, 2015 WL 5774981 (E.D.N.Y. Sept. 30,
    2015) .......................................................................................................12, 23

*EEOC v. Freeman*,
    961 F. Supp. 2d 783 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th
    Cir. 2015) ..........................................................................................................43

*Forman v. Davis*,
    371 U.S. 178 (1962)....................................................................................17, 18

*Freeman v. Rochester Psychiatric Ctr.*,
    No. 6:12-CV-06045 (MAT), 2018 WL 1244479 (W.D.N.Y. Mar.
    9, 2018) .............................................................................................................31

*Hobbs v. Emas Properties, Inc.*,
    No. 17-CV-0948 (CM), 2019 WL 2003990 (S.D.N.Y. May 3,
    2019) .................................................................................................................25

*Horoshko v. Citibank, N.A.*,
    373 F.3d 248 (2d Cir. 2004) ............................................................................33

*Indiana Public Retirement System v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016) ..............................................................................17

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

*Knife Rights, Inc. v. Vance*,
    802 F.3d 377 (2d Cir. 2015) ..............................................................39

*Long v. Carberry*,
    151 F.R.D. 240 (S.D.N.Y. 1993) ........................................................22

*Lucente v. International Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002) ..............................................................42

*Mandala v. NTT DATA, Inc.*,
    18-CV-6591, 2019 WL 3237361 (W.D.N.Y. July 18, 2019) .....................*passim*

*Mandala v. NTT DATA, Inc.*,
    975 F.3d 202 (2d Cir. 2020) ..............................................9, 27, 42, 43

*Mandala v. NTT DATA, Inc.*,
    988 F.3d 664 (2d. Cir. 2021) ..............................................10, 12, 28

*Metzler Inv. Gmbh v. Chipotle Mexican Grill*, *Inc.*,
    970 F.3d 133 (2d Cir. 2020) ........................................................19, 21

*Miller v. Norton*,
    No. 04-CV-3223 (CBA), 2008 WL 1902233 (E.D.N.Y. Apr. 28,
    2008), *aff'd sub nom. Miller v. Kempthorne*, 357 F. App'x 384 (2d
    Cir. 2009) ........................................................................................31

*National Petrochemical Co. of Iran v. M/T Stolt Sheaf*,
    930 F.2d 240 (2d Cir. 1991) ........................................................15, 16

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) ..............................................13, 31, 36, 38

*In re Optionable Sec. Litig.*,
    No. 07 CIV. 3753 (PAC), 2009 WL 1653552 (S.D.N.Y. June 15,
    2009) ..............................................................................................31

*Paddington Partners v. Bouchard*,
    34 F.3d 1132 (2d Cir. 1994) ..............................................................29

iv

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

*Palacios v. Coca-Cola Co.*,
499 F. App'x 54 (2d Cir. 2012) ............................................................13, 22, 35

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*,
507 U.S. 380 (1993) ......................................................................................12, 22

*PRC Harris, Inc. v. Boeing Co.*,
700 F.2d 894 (2d Cir. 1983) ..................................................................23, 25, 31

*Rodriguez v. Mitchell*,
252 F.3d 191 (2d Cir. 2001) ...............................................................................15

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990) ..........................................................................25, 39

*Stevens v. Miller*,
676 F.3d 62 (2d Cir. 2012) ........................................................................20, 22, 31

*Truskoski v. ESPN, Inc.*,
60 F.3d 74 (2d Cir. 1995) ...........................................................................12, 23

*United States v. Bank of New York*,
14 F.3d 756 (2d Cir. 1994) ..........................................................................13, 35

*United States v. Int'l Brotherhood of Teamsters*,
247 F.3d 370 (2d Cir. 2001) ...............................................................................31

*Warren v. Garvin*,
219 F.3d 111 (2d Cir. 2000) ...............................................................................22

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) ............................................................17, 18, 19, 34

**Other Authorities**

Fed. R. Civ. P. 60(c)(1) .........................................................................................12, 22

Federal Rule of Civil Procedure 60(b) ....................................................................20

Federal Rule of Civil Procedure 60(b)(6) ...............................................................30

v

## JURISDICTIONAL STATEMENT

NTT DATA does not dispute for purposes of this appeal that the Court has appellate jurisdiction over the U.S. District Court for the Western District of New York's ("District Court") Decision and Order, dated December 6, 2021, denying Plaintiffs-Appellants' Motion to Vacate Judgment under Federal Rule of Civil Procedure 60(b) (JA299-314),[1] pursuant to 28 U.S.C. § 1291, and the District Court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs-Appellants' claim for disparate impact discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

I.   Did the District Court apply the correct legal standard in denying Plaintiffs-Appellants' Motion to Vacate Judgment under Federal Rule of Civil Procedure 60(b)?

**Answer: Yes.**

II.  Did the District Court properly exercise its discretion by holding that Plaintiffs-Appellants' Motion to Vacate Judgment under Federal Rule of Civil Procedure 60(b) was untimely where Plaintiffs-Appellants intentionally

---

[1]  The Joint Appendix is cited herein as "JA[page number]."

1

waited over one year and eight months to move to vacate the judgment dismissing their claims?

**Answer: Yes.**

III.  Did the District Court properly exercise its discretion by holding that Plaintiffs-Appellants failed to demonstrate extraordinary circumstances as required to obtain relief under Federal Rule of Civil Procedure 60(b)(6) where Plaintiffs-Appellants sought such relief solely to avoid the consequences of the deliberate choices they made while litigating this case?

**Answer: Yes.**

## STATEMENT OF THE CASE

In this case, the District Court granted Defendant-Appellee's Motion to Dismiss nearly three years ago, holding that Plaintiffs-Appellants' Complaint failed to meet the well-established pleading standard for Title VII disparate impact claims. In doing so, the District Court properly rejected Plaintiffs-Appellants' attempt to create a lower pleading standard for such claims, which would have allowed individuals with nothing more than general population statistics completely divorced from the actual allegations at issue to open the courthouse doors and file a class action lawsuit against any employer. Shortly thereafter, final judgment was entered, and the case was closed. Plaintiffs-Appellants appealed to this Court, where this Court affirmed the District Court's Decision and Order dismissing Plaintiffs-

2

Appellants' claims. Then, Plaintiffs-Appellants filed a Petition for *En Banc* and Panel Rehearing, which this Court also denied. Now, Plaintiffs-Appellants are seeking a fourth bite at the apple, which should also be denied.

The following are the pleaded "facts" alleged in Plaintiffs-Appellants' Complaint, which are assumed to be true because this case was decided on a Motion to Dismiss:

According to the Complaint,[2] "[i]n or around January or February of 2017," Plaintiff-Appellant George Mandala ("Mandala"), who is African American, applied for a job as a Salesforce Developer with Defendant-Appellee. (*See* JA7, ¶¶ 15, 16, 23). During his interviews, Mandala allegedly answered technical questions "competently, based on his years of applicable work experience," and his offer letter stated that the "management team was impressed with [his] credentials and experience."[3] (*See* JA8, ¶¶ 24, 27). On March 22, 2017, Defendant-Appellee sent Mandala an offer letter for a position as an Application Software Development

---

[2] This section of this Brief includes citations to Plaintiffs-Appellants' initial Complaint dated August 15, 2018 (JA4-27), which was dismissed on July 18, 2019.

[3] Notably, Plaintiffs-Appellants removed the allegations concerning their technical knowledge, many years of relevant work experience, and high level of education from the proposed Amended Complaint (*see* JA113), showcasing their attempt to plead **by omission** around the District Court's decision dismissing the Complaint and this Court's affirming opinion, and the total irrelevance of Plaintiffs' statistic concerning groups with "some college education" (and not technical expertise, years of experience, and the attainment of master's degrees, which are at issue here).

3

Senior Principal Consultant, and Mandala accepted the position. (*See* JA8, ¶¶ 27, 29). After Defendant-Appellee conducted a routine background check with Mandala's permission, a recruiter allegedly informed Mandala that Defendant-Appellee had a purported policy not to hire persons with felony convictions—an allegation which Defendant-Appellee disputes but which must be accepted as true at this stage of the proceeding. (*See* JA9, ¶ 33). Soon thereafter, Mandala received a letter from Defendant-Appellee dated April 6, 2017, which allegedly stated that Defendant-Appellee "was withdrawing Mr. Mandala's job offer[.]" (*See* JA9, ¶ 34).

Separately, Plaintiff-Appellant Charles Barnett ("Barnett"), who is African American, was "contacted" by Defendant-Appellee regarding a "web developer" position in or around July 2017. (*See* JA7, 10, ¶¶ 18, 38). Barnett had allegedly "achieved a Masters of Science in Computer Science Technology" before applying. (*See* JA11, ¶ 50). After an in-person interview, Barnett received an offer of employment, which he accepted. (*See* JA10, ¶ 43). Barnett then authorized a background check. (*See* JA10, ¶ 44). After Defendant-Appellee conducted the check, Barnett alleges that he was advised that his offer of employment was withdrawn because of his felony convictions. (*See* JA10-11, ¶¶ 44-48).

On August 15, 2018, Plaintiffs-Appellants filed a nationwide putative class action against Defendant-Appellee in the U.S. District Court for the Western District of New York. (JA4-27). In the Complaint, Plaintiffs-Appellants asserted one

4

federal claim and two state law claims. (*See* JA23-26, ¶¶ 105-124). For the federal claim, Plaintiffs-Appellants alleged on behalf of themselves and "the Title VII Disparate Impact Class" that Defendant-Appellee's alleged "policy and practice of denying employment opportunities to individuals with criminal convictions had a disparate impact on African Americans" in violation of Title VII. (*See* JA24, ¶ 110). In support of their purported disparate impact claim, Plaintiffs-Appellants asserted that "African Americans are arrested and incarcerated for crimes at higher rates than Whites, relative to their share of the national population" and cited to statistics addressing U.S. prisoners and national incarceration rates. (*See* JA11-12, ¶¶ 52-54).

On November 13, 2018, Defendant-Appellee filed its Motion to Dismiss, in which Defendant-Appellee argued, in part, that "the purported statistics cited by Plaintiffs have absolutely nothing to do with the alleged facially neutral policy they challenge – i.e., the alleged failure to hire applicants with criminal felony convictions," and thus, Plaintiffs-Appellants failed to state a plausible claim for relief. (*See* JA28, 36). In May of 2019, in its Cross-Motion to Stay Discovery, Defendant-Appellee again explained that Plaintiffs-Appellants failed to meet the blackletter pleading standard (as the District Court recognized in its Decision and Order dated December 6, 2021), stating "Plaintiffs proffer no facts that plausibly support that [Defendant's alleged policies] caused any disparate impact on any protected group." (*See* JA310). Despite Defendant-Appellee's repeated explanation

5

of the established pleading standard and the reasons that Plaintiffs-Appellants failed to meet it, Plaintiffs-Appellants did **not** seek leave to amend their Complaint while the Motion to Dismiss was pending (even in the alternative), and instead, decided to stand by the insufficient allegations in their Complaint.[4]

Further, on June 27, 2019, the Court heard oral argument on the Motion to Dismiss, during which the relevant pleading standard and Plaintiffs-Appellants' improper reliance on general population statistics were discussed at length. (*See* JA170-201). Indeed, during oral argument, Defendant-Appellee identified several relevant Supreme Court and Second Circuit decisions explaining the applicable pleading standard, including the landmark case *Ashcroft v. Iqbal* (556 U.S. 662 (2009)), and the District Court engaged in a line of questioning concerning the pleading standard with both parties. (*See* JA171-185).

Moreover, during oral argument, Plaintiffs-Appellants' counsel admitted that the allegations relating to the general population were completely unrelated to their disparate impact claims. Specifically, Plaintiffs-Appellants claimed only that "qualified" individuals (i.e., those that applied for and received job offers and therefore, were presumably qualified) were affected by Defendant-Appellee's

---

[4] In their Appellate Brief, Plaintiffs-Appellants claim that they "requested" leave to amend their Complaint in their opposition papers to the Motion to Dismiss. (*See* Pl. Br. at 28, 38). As explained in Part I(C) of this Brief, this contention is patently false. *See infra*, p. 33-34.

alleged felony conviction policy. (*See* JA197 ("[T]he pool would be . . . all applicants given a conditional offer of employment and then the question we'd be looking at is who was hired and who was being screened out because of their criminal records and what are their races[.]"); *see also* JA193 ("[A]t this stage, we're talking about who was given a conditional offer.")). Thus, the relevant inquiry had nothing to do with the general population, and everything to do with only "qualified" individuals. Again, either during or following oral argument, Plaintiffs-Appellants had the opportunity to request leave to amend their Complaint to attempt to correct their deficient pleadings, but they did **not** do so. Instead, Plaintiffs-Appellants still decided to stand by their insufficient allegations.

On July 18, 2019, the District Court issued a Decision and Order granting Defendant-Appellee's Motion to Dismiss (the "July 18, 2019 Decision"). (JA88-94). The District Court held that Plaintiffs-Appellants did not meet their burden of pleading a plausible Title VII claim. *Mandala v. NTT DATA, Inc.*, 18-CV-6591, 2019 WL 3237361, at *4 (W.D.N.Y. July 18, 2019). Specifically, the District Court explained that "Plaintiffs have not alleged facts showing that Defendant's facially-neutral policy of not hiring convicted felons is related to the statistical disparity in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers in the pool of qualified applicants for [Defendant-Appellee's] positions." *Id.* at *4. The District Court reasoned: "[G]eneral statistics

7

are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions." *Id.* The District Court further declined to exercise jurisdiction over Plaintiffs-Appellants' state law claims because it dismissed the only federal claim in this case. *Id.* The District Court entered the judgment the next day. (JA165, ¶ 8).

Following the District Court's dismissal on the grounds set forth in Defendant-Appellee's motion papers and addressed in detail during oral argument, Plaintiffs-Appellants had the opportunity to request leave to amend their Complaint by filing a timely motion under Federal Rule of Civil Procedure 59(e) or 60(b), but they did **not** do so. Instead, Plaintiffs-Appellants decided to appeal the District Court's July 18, 2019 Decision, without ever requesting leave to amend, in an apparent attempt to use this proceeding as an opportunity to argue for this Court to accept a lower pleading standard for Title VII disparate impact claims. (*See* JA165-66, ¶¶ 9-11).

Shortly thereafter, on August 16, 2019, Mandala filed a separate putative class action complaint in New York state court, in which he asserted a disparate impact discrimination claim under the New York Human Rights Law and the same state law claims for which the District Court declined to exercise supplemental jurisdiction. (*See* JA168, ¶ 26, Ex. 9). Later, after this Court issued its Order denying the *en banc*

8

rehearing in this case, Plaintiffs-Appellants filed an Amended Complaint in state court, asserting the same allegations.  (*See* JA169, ¶ 27, Ex. 10).

In the meantime, after the parties fully briefed Plaintiffs-Appellants' appeal in the federal action and appeared for oral argument, the Second Circuit issued its opinion affirming the District Court's judgment dismissing the Complaint on September 21, 2020.  *See Mandala v. NTT DATA, Inc.,* 975 F.3d 202 (2d Cir. 2020). In its opinion, this Court agreed with the District Court that Plaintiffs-Appellants failed to state a plausible claim, stating: "Plaintiffs provide no allegations to demonstrate that national arrest or incarceration statistics are in any way representative of the pool of potential applicants qualified for a position at NTT." *Id.* at 211.  Following that decision, in which this Court clearly explained the reasons that Plaintiffs-Appellants failed to meet the well-established pleading standard for a disparate impact claim, Plaintiffs-Appellants still did **not** pursue leave to amend their deficient pleading by filing a motion to vacate the judgment with the District Court.

Rather, Plaintiffs-Appellants continued to stand by their deficient allegations, and decided to push forward with their futile attempt to establish a lower pleading standard by filing a Petition for *En Banc* and Panel Rehearing on October 5, 2020. (*See* JA202-19).  In their Petition—for the first time—Plaintiffs-Appellants requested, in the alternative, that the panel rehear and remand the case to the District Court to permit Plaintiffs-Appellants to amend the Complaint.  (*See* JA217-18).  On

9

February 23, 2021, this Court issued its Order denying Plaintiffs-Appellants' request for a rehearing *en banc*, which, in part, effectively **denied** Plaintiffs-Appellants' request for a rehearing to **remand the case back to the District Court for the opportunity to replead**. *See Mandala v. NTT DATA, Inc.*, 988 F.3d 664 (2d. Cir. 2021).

After three losses, in a last-ditch effort to save their deficient Complaint, Plaintiffs-Appellants made this significantly untimely request that the District Court vacate the final judgment to allow them leave to amend their Complaint. (*See* JA288-98). Plaintiffs-Appellants filed the Motion to Vacate on March 31, 2021, more than one year and eight months after the District Court issued its July 18, 2019 Decision placing Plaintiffs-Appellants on explicit notice of the deficiencies in their Complaint and the entry of judgment. (*See* JA288-98). On December 6, 2021, the District Court (Siragusa, J.) issued a Decision and Order denying Plaintiffs-Appellants' Motion to Vacate (the "December 6, 2021 Decision"). (JA299-14). The District Court correctly found that Plaintiffs-Appellants "failed to demonstrate adequate grounds for relief from the . . . judgment under Rule 60" for two reasons. (JA304). First, the District Court held that Plaintiffs-Appellants' Motion was untimely. (JA306-08). Second, the District Court held that even if the Motion was timely, Plaintiffs-Appellants "presented no 'extraordinary circumstances' that

10

would warrant the provision of the extraordinary remedy of relief from judgment." (JA308-14). This appeal followed.

## SUMMARY OF THE ARGUMENT

Plaintiffs-Appellants argue that they should be freely given leave to replead, a request that is woefully untimely and severely prejudicial to Defendant-Appellee. Plaintiffs-Appellants have been on notice of the deficiencies in their pleadings based on blackletter law since November 2018 and despite multiple opportunities to request leave to replead both pre-trial and post-judgment, they instead waited for more than 20 months after the entry of final judgment to move for the extraordinary relief of vacating the judgment. Plaintiffs-Appellants' position is not only untimely, but also inconsistent with Second Circuit precedent and must be rejected.

In denying Plaintiffs-Appellants' Motion, the District Court properly determined that relief under Rule 60(b) was not available to Plaintiffs-Appellants because their Motion was time-barred. (JA306-08). In an untenable attempt to avoid that outcome, Plaintiffs-Appellants suggest that the District Court and this Court applied an unclear and unsettled pleading standard to their Title VII claims, and thus, they had no way to know how they could state a plausible claim until this Court issued its decision denying their Petition for *En Banc* and Panel Rehearing. This is entirely false. As this Court recognized in the majority concurrence denying Plaintiffs-Appellants' Petition, the dismissal of Plaintiffs-Appellants' Complaint

11

"reflect[ed] a heartland application of the plausibility pleading standard that has been the law of this Circuit for more than a decade." *Mandala*, 988 F.3d at 665 (Sullivan, J. at Nardini, J., concurring). Despite being on notice of the applicable, well-settled pleading standard, Plaintiffs-Appellants neglected to request leave to amend within a reasonable time and offer no justifiable explanation for their failures.

Under Rule 60(b)(1), a party must make a motion to vacate the judgment based on "mistake . . . or excusable neglect," which includes where a party or a party's counsel is to blame for the situation necessitating such relief, within one year of the entry of judgment. *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393 (1993); FED. R. CIV. P. 60(c)(1). Here, Plaintiffs-Appellants waited more than one year and eight months (i.e., over 20 months) to move to vacate, and thus, their Motion was untimely.

Even if Plaintiffs-Appellants' argument that their Motion should have been categorized as a Rule 60(b)(6) Motion, as opposed to Rule 60(b)(1) Motion, is considered, their Motion remains untimely; based on Second Circuit precedent, Rule 60(b)(6) Motions must be made within 18 months of entry of judgment absent good cause or mitigating circumstances (*see e.g., Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir. 1995); *East End Eruv Ass'n, Inc. v. The Village of Westhampton Beach,* No. CV 11-213 AKT, 2015 WL 5774981, at *2 (E.D.N.Y. Sept. 30, 2015)), and

12

Plaintiffs-Appellants have failed to make such a showing here. Thus, the District Court properly denied Plaintiffs-Appellants' Motion as untimely.

Even assuming Plaintiffs-Appellants had filed a timely motion (which they did not), the extraordinary relief of vacating the final judgment is not warranted here because Plaintiffs-Appellants did not, and cannot, show extraordinary circumstances justifying such relief. *See Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986). Plaintiffs-Appellants unconvincingly attempt to paint themselves as unwitting victims who are being punished by the courts (*see* Pl. Br. at 14),[5] when in reality, Plaintiffs-Appellants are simply trying to avoid the consequences of their own deliberate decision to decline to request leave to amend in favor of steadfastly standing by their pleadings in the hopes of establishing a lower pleading standard for Title VII disparate impact claims on appeal. In accordance with this Court's precedent, Plaintiffs-Appellants attempt to use Rule 60(b)(6) to relieve themselves from the consequences of their own "free, calculated, deliberate choices" must be summarily rejected. *See e.g., Palacios v. Coca-Cola Co.*, 499 F. App'x 54, 56 (2d Cir. 2012); *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994). Plaintiffs-Appellants' undue delay in requesting leave to replead and their actions demonstrating dilatory motive, as well as the futility of their proposed amendments, underscore that Plaintiffs-Appellants are not entitled to relief under Rule 60(b)(6).

---

[5] The Brief for Plaintiffs-Appellants is cited herein as "Pl. Br. at [page number]."

13

Simply put, the law and the facts of this case do not support that the judgment should be vacated.  It has been over two years and nine months since the entry of judgment, and in that time, Plaintiffs-Appellants have suffered loss after loss in the misguided hope that this Court would divert from established Supreme Court and Second Circuit precedent and make new law allowing them to plead nothing more than general population statistics that are completely unrelated to the population at issue in the case to state a claim.  Only after realizing that such a path was futile did Plaintiffs-Appellants make an untimely motion seeking the extraordinary relief of vacating the final judgment.  Enough is enough; Defendant-Appellee should be able to rely on the finality of the judgment after it was examined in detail and then affirmed on appeal.  Accordingly, the Decision and Order of the District Court denying Plaintiffs-Appellants' Motion under Rule 60(b) should be affirmed.

## ARGUMENT

### I.     This Court Should Affirm the District Court's December 6, 2021 Decision Denying Plaintiffs-Appellants' Motion Under Rule 60(b) in All Respects

This Court should affirm the District Court's thorough and well-reasoned decision denying Plaintiffs-Appellants' Motion to Vacate Judgment.  No matter how Plaintiffs-Appellants try to reframe and reconfigure their arguments, while distorting the procedural history of this case and misrepresenting the opinions of the District Court and this Court, they are not entitled to relief under Rule 60(b).

14

Courts review denial of a Rule 60(b) motion for abuse of discretion. *Rodriguez v. Mitchell*, 252 F.3d 191, 200 (2d Cir. 2001). Pursuant to this standard, courts "must affirm the . . . denial of vacatur, unless the ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Rodriguez*, 252 F.3d at 200 (internal quotation marks and citations omitted). As a result, the scope of review is narrow, and "[a]n appeal from the denial of a 60(b) motion raises only the question of whether that motion was properly disposed; it is not a vehicle for examining the underlying judgment itself." *See Cody, Inc. v. Town of Woodbury*, 179 F.3d 52, 56 (2d Cir. 1999). Here, for the reasons that follow, the District Court correctly applied the law and properly assessed the evidence. Thus, the December 6, 2021 Decision of the District Court should be affirmed in its entirety.

### A. *The District Court Applied the Correct Legal Standard*

It is well-settled that following the entry of a final judgment, "filing of an amended complaint is not permissible **until** judgment is set aside or vacated pursuant to FED. R. CIV. P. 59(e) or 60(b)." *National Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991) (emphasis added); *see also In re Buckskin Realty, Inc.*, No. 19-3828-BK, 2021 WL 1081480, at *2 (2d Cir. Mar. 22, 2021) ("[A] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside."). "[T]o hold otherwise would enable the liberal

15

amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *National Petrochemical*, 930 F.2d at 245. This requirement is "meant to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters'" (*Abate v. Fifth Third Bank*, No. 13-CV-9078 (VSB), 2019 WL 2409792, at *3–4 (S.D.N.Y. June 6, 2019) (internal citation omitted))—which is exactly what Plaintiffs-Appellants seek to do here.

As the District Court properly recognized: "[T]here is a clear distinction between *pre-trial* application of Rule 15 and the *post-judgment* application of Rule 15 in light of Rules 59(e) and 60." (JA303). After the final judgment, the movant "must present adequate grounds for relief under . . . Rule 60, and courts must give 'due regard' – but not 'sole regard' – to Rule 15, lest the liberal amendment policy of Rule 15(a) 'swallow the philosophy favoring finality of judgments whole.'" (JA304 (citing *Metzler Inv. Gmbh v. Chipotle Mexican Grill*, *Inc.,* 970 F.3d 133, 146 (2d Cir. 2020) and *Nat'l Petrochem*, 930 F.2d at 245)). "Because '[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances, a party moving under Rule 60(b) must meet an 'onerous standard.'" (JA305 (citing *United States v. Int'l Brotherhood of Teamsters,* 247 F.3d 370, 391 (2d Cir. 2001)).

16

In an attempt to downplay the stringent requirements for relief under Rule 60(b), Plaintiffs-Appellants argue that amendment "shall be given freely" (Pl. Br. at 22 (internal citations omitted)), while ignoring the "onerous standard" required to have a final judgment set aside. Additionally, the cases Plaintiffs-Appellants cite where the court vacated the judgment to allow the plaintiff leave to replead are easily distinguishable. As an initial matter, *Forman v. Davis*, 371 U.S. 178 (1962), involved a motion under Rule 59(e), and therefore, the Court did not address the standard to vacate a judgment under Rule 60(b). *Id.* at 181-82. Moreover, unlike here, in *Forman*, the petitioner filed her Rule 59(e) motion **only one day** after entry of judgment. Similarly, in *Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011), the plaintiff "timely moved for reargument and reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) . . . [to] obtain leave to amend her original complaint" **just 14 days** after the entry of the final judgment. *See id.* at 211-12; *see also Indiana Public Retirement System v. SAIC, Inc.*, 818 F.3d 85, 91 (2d Cir. 2016) (plaintiffs moved for relief under both Rule 59(e) and 60(b) **only 33 days** after entry of final judgment); *Branum v. Clark*, 927 F.2d 698, 703 (2d Cir. 1991) (plaintiff, who initially appeared *pro se*, filed the Rule 60(b) motion **just 18 days** following entry of judgment, after retaining counsel).

In material contrast, here, Plaintiffs-Appellants deliberately chose to wait for approximately **one year and eight months** (i.e., **approximately 621 days**) to

17

request such relief from the District Court, after exhausting their attempts to obtain a ruling that would allow them to file a class action lawsuit against any employer they wish armed with only general population statistics. Plaintiffs-Appellants completely misrepresent this Court's prior holdings by claiming that there is a per se rule that "failure to amend earlier" cannot be a "'justifying reason' for denying post-judgment relief." (*See* Pl. Br. at 25, 38). In cases upon which Plaintiffs-Appellants purport to rely, the courts held that only the failure to seek leave to amend **prior to** entry of judgment, does not support denial of a motion for leave to reconsider or to vacate, unless there is a "justifying reason." *See Williams*, 659 F.3d at 214 (citing *Forman*, 371 U.S. at 182). Those cases do **not** create a blanket rule that a party's intentional failure to request leave to amend within a reasonable time post-judgment can never be considered when denying a Rule 60(b) motion. Indeed, in *Forman*, the Supreme Court explained that justifying reasons for denying leave to reconsider include, but are not limited to "undue delay, bad faith, or dilatory motive[.]" *Forman*, 371 U.S. at 182.

Plaintiffs-Appellants also claim that in *Williams*, this Court held that plaintiffs have "no obligation to seek leave to replead . . . immediately after the issuance of an order granting dismissal" (*see* Pl. Br. at 23 (internal quotation marks omitted)), even though the *Williams* decision **never** addressed that issue. In actuality, the *Williams* decision explains that "a plaintiff need not 'seek leave to replead either together with

18

her response to the motion to dismiss, or indeed prior to the district court's entry of judgment.'" *Metzler Inv. Gmbh*, 970 F.3d at 147 (quoting *Williams*, 659 F.3d at 214). Unlike in *Williams* (and contrary to Plaintiffs-Appellants' baseless assertion (*see* Pl. Br. at 23)), here, the District Court never indicated that Plaintiffs-Appellants were required to request leave to replead "in the first instance," i.e., prior to the entry of judgment. *See Williams*, 659 F.3d at 214 (2d Cir. 2011). Instead, the District Court fully considered Plaintiffs-Appellants' post-judgment Motion, and properly held that Plaintiffs-Appellants could not avail themselves of the requested extraordinary relief under the specific facts of this case.

In denying Plaintiffs-Appellants' Rule 60(b) Motion, the District Court provided justifying reasons for its decision: (1) Plaintiffs-Appellants' Motion to Vacate Judgment was untimely; and (2) Plaintiffs-Appellants failed to show "extraordinary circumstances"—a prerequisite for such relief. When reaching this conclusion, the District Court gave due regard to Rule 15, recognizing that Plaintiffs-Appellants acted with dilatory motive and unduly delayed in requesting leave to amend, by instead making the deliberate decision to forgo the multiple opportunities they had to request leave to amend in "**both** the pre-trial **and** post-judgment context." (*See* JA313 (emphasis added)). Accordingly, the District Court correctly applied the legal standard in this case, and as set forth below, did not abuse its discretion in denying Plaintiffs-Appellants' Motion to Vacate Judgment.

19

**B.** **The District Court Did Not Abuse its Discretion by Holding that Plaintiffs-Appellants' Motion to Vacate Judgement Was Untimely**

    **i.** **The District Court Properly Held that Plaintiffs-Appellants' Motion Was an Untimely Rule 60(b)(1) Motion**

Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from a final judgment for several reasons, including, in part: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b). As the Second Circuit has explained, "where a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." *Stevens v. Miller*, 676 F.3d 62, 67-68 (2d Cir. 2012) (internal quotation marks and citations omitted).

Here, the District Court properly held that Plaintiffs-Appellants' Motion was premised on their own mistake and neglect, and thus, should have been classified as a Rule 60(b)(1) Motion. (JA306-08). Plaintiffs-Appellants indicate that the District Court determined that they committed a "mistake" by seeking "post-judgment leave to amend under Rules 60(b)(6) and 15." (Pl. Br. at 33). This is a total misrepresentation of the District Court's reasoning. Instead, the District Court correctly determined that Plaintiffs-Appellants' Motion was "premised on their own mistake, inadvertence and neglect, rather than the 'extraordinary circumstances' required by Rule 60(b)(6)" because Plaintiffs-Appellants **repeatedly** failed to satisfy

the "plausibility pleading standard that has been the law of this Circuit for more than a decade." (JA306-07 (citing *Mandala*, 988 F.3d at 665)).

Although they were on notice of the applicable pleading standard since at least 2018, Plaintiffs-Appellants neglected to correct their misapplication of blackletter law by requesting leave to amend within a reasonable time. Contrary to Plaintiffs-Appellants' apparent contention, parties are not entitled to an unlimited amount of time to seek leave to amend a complaint after entry of judgment, particularly where, as here, the party had ample opportunities in which to request such relief, and the relevant pleading standards were unambiguous and well-defined. *See Metzler Inv. Gmbh*, 970 F.3d at 147 ("It seems to us self-evident that a plaintiff afforded attempt after attempt—and consequently, additional time to investigate—might one day succeed in stating a claim. But the federal rules and policies behind them do not permit such limitless possibility. Rule[ ] . . . 60(b) serve[s] this purpose.").

Plaintiffs-Appellants further claim that they are not attempting to "undo any 'mistakes' supposedly committed in the past." (Pl. Br. at 36). This is untrue. Plaintiffs-Appellants have moved to vacate the judgment and now appeal the decision denying that Motion so they can reopen the case and amend their Complaint—an opportunity they neglected to request either prior to the entry of judgment or in a timely manner post-judgment. (*See* JA165-67).

21

A party who fails "to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment[.]" *Pioneer,* 507 U.S. at 393; *see also* FED. R. CIV. P. 60(c)(1). Indeed, where "a party is partly to blame for the delay, relief must be sought within one year under subsection (1)" of Rule 60(b), and not under Rule 60(b)(6). *See Pioneer*, 507 U.S. at 393; *see also Stevens*, 676 F.3d at 68, 70 (holding the state's motion to vacate was a Rule 60(b)(1) motion where the relief sought was necessitated by the state's "failures" and had the state taken different action, "it would have avoided the unfortunate situation it [found] itself in"); *Long v. Carberry*, 151 F.R.D. 240, 243-44 (S.D.N.Y. 1993) (denying Rule 60(b)(1) motion where relief sought was necessitated by either "plaintiff's attorney's tactical decisions or ignorance of procedural rules governing actions in federal court"); *Brown v. Burnside*, 109 F.R.D. 412, 413 (E.D.N.Y. 1986) (holding motion was a Rule 60(b)(1) motion where relief sought was necessitated by plaintiffs' failure to conduct discovery or take other action, and plaintiffs failed to seek relief within one year); *c.f., Palacios*, 499 F. App'x at 56 (denying Rule 60(b)(6) motion where the need for such relief was "entirely of [the movant's] own making"). This one-year limitations period is "absolute." *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000).

In this case, Plaintiffs-Appellants filed their Motion to Vacate Judgment more than one year and eight months after the entry of the judgment. (JA167). Because

Plaintiffs-Appellants failed to file their Motion within one year of the entry of judgment, the District Court properly denied their Motion as untimely.  (JA308).

### ii. Even If Plaintiffs-Appellants' Motion Was Properly Brought Under FED. R. CIV. P. 60(b)(6), Their Motion Was Still Untimely

Even assuming Plaintiffs-Appellants' Motion should be considered a Rule 60(b)(6) Motion (which it should not), it would still be untimely.[6]  To avoid being dismissed as time-barred, a Rule 60(b) motion must be filed within a reasonable time period.  *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 897 (2d Cir. 1983).  The Second Circuit has interpreted a "reasonable time" in which to bring a Rule 60(b)(6) motion as "eighteen months, unless the movant shows good cause for the delay or mitigating circumstances."  *See e.g., Truskoski v. ESPN*, 60 F.3d 74, 77 (2d Cir. 1995); *see also East End,* at 2015 WL 5774981 at *2.

Here, Plaintiffs-Appellants filed their Motion to Vacate Judgment over one year and eight months (i.e., more than 20 months) after the entry of judgment, and there is no "good cause" or "mitigating circumstances" that justify their unreasonable delay.  As an initial matter, contrary to Plaintiffs-Appellants' inexplicable contention that there was "no undue delay" (Pl. Br. at 30), Plaintiffs-

---

[6] An appellate court may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *Acequip Ltd. v. American Engineering Corp.*, 315 F.3d 151, 155 (2d Cir. 2003).

Appellants failed to promptly seek leave to vacate the final judgment and amend their Complaint. The District Court issued its Decision and Order granting Defendant-Appellee's Motion to Dismiss on July 18, 2019. *(*JA88-94). In its July 18, 2019 Decision, the District Court unequivocally explained:

> Plaintiffs have not alleged facts showing that Defendant's facially-neutral policy of not hiring convicted felons is related to the statistical disparity in the numbers of African-Americans arrested and convicted of crimes **in proportion to their representative numbers in the pool of qualified applicants for Defendant's positions**… general statistics are inadequate to show a relationship between the pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions.

*Mandala*, 2019 WL 3237361 at *4 (emphasis added).

Rather than seeking leave to vacate the judgment and to replead immediately after the District Court issued its July 18, 2019 Decision, Plaintiffs-Appellants decided to proceed to appeal, without even filing a Motion to Vacate Judgment with the District Court. Then, following this Court's decision affirming the judgment dismissing the Complaint, Plaintiffs-Appellants decided to file a Petition for *En Banc* and Panel Rehearing. (JA202-18). Only after this Court issued its Order denying Plaintiffs-Appellants' request for a rehearing *en banc*, which also, in effect, denied Plaintiffs-Appellants' request for a rehearing to remand the case back to the District Court for the chance to replead, did Plaintiffs-Appellants finally decide to return to the District Court in a last-ditch effort to seek leave to amend. Plaintiffs-Appellants did so approximately **20 months** after the District Court issued its July

24

18, 2019 Decision that put Plaintiffs-Appellants on explicit notice of the deficiencies in their Complaint, and over **28 months** after Defendant-Appellee explained the deficiencies in Plaintiffs-Appellants' pleadings based on well-settled Supreme Court and Second Circuit precedent in the Motion to Dismiss.

By waiting well over 18 months after the entry of judgment to file the Motion to Vacate, while making a calculated decision to stand by their insufficient pleadings despite having knowledge of the deficiencies in the Complaint, Plaintiffs-Appellants failed to comply with Rule 60(b)(6)'s reasonable time requirement. *See e.g., State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir. 1990) (holding delay of "nineteen months after [defendant] first challenged the applicability of Connecticut law" was "unreasonably long and apparently lacked a good faith basis"); *PRC Harris*, 700 F.2d at 897 (explaining plaintiff's delay filing a Rule 60(b) motion was unreasonably long where plaintiff failed to move to amend for almost one year while otherwise litigating); *Hobbs v. Emas Properties, Inc.*, No. 17-CV-0948 (CM), 2019 WL 2003990, at *1-2 (S.D.N.Y. May 3, 2019) (holding plaintiff's Rule 60(b)(6) motion was untimely where plaintiff failed to request such relief for over one year and four months after entry of judgment).

In a futile attempt to justify their delay, Plaintiffs-Appellants claim that mitigating circumstances exist because they needed this Court to explain what "statistical allegations were required to state a plausible claim." (*See* Pl. Br. at 28).

25

Plaintiffs-Appellants' excuse for their undue delay is entirely meritless. First, it is not the Court's job to instruct Plaintiffs-Appellants how to plead their claims.[7]

Second, Plaintiffs-Appellants' assertion that "[n]either the [D]istrict [C]ourt nor [Defendant-Appellee] identified any alternative way . . . that Plaintiffs could support an inference of disparate impact based on statistics" (Pl. Br. at 7) is blatantly false. In fact, Plaintiffs-Appellants have been aware of the applicable pleading standard, including the need to allege more than irrelevant, general statistics, since at least 2018. Specifically, Defendant-Appellee explained the well-established pleading standard for Title VII disparate impact claims in its papers in support of its Motion to Dismiss the Complaint, filed on November 13, 2018. (*See* JA28-51). For example, Defendant-Appellee explained that Plaintiffs-Appellants failed to meet the pleading standard, in part, because "despite their acknowledgment that the labor pool only involves 'qualified African American applicants,' Plaintiffs generally refer to genetic statistics for all 'African Americans,' which is not the applicable labor pool here." (*See* JA36). Defendant-Appellee further explained that Plaintiffs-Appellants' claims failed, in part, because "Plaintiffs offer no statistics supporting that African

_____

[7] If every plaintiff who had their case dismissed pursuant to Rule 12(b) appealed to a court of appeals for guidance concerning the manner in which to plead their claims, then returned to a district court (absent remand from the court of appeals) to request that the court vacate the final judgment, reopen a closed case, and allow them to replead their claims, an unwieldy and inefficient judicial process would exist. This is simply not the way our judicial system functions. Permitting such conduct would risk creating a dangerous judicial precedent, fraught with inefficiency.

Americans with this technical skill set are convicted of felonies at a higher rate than other racial groups." (*See* JA36 (internal citations omitted)).

Further, in its July 18, 2019 Decision, the District Court correctly explained that Plaintiffs-Appellants' use of general statistics was insufficient to satisfy the applicable pleading standard because such statistics are not representative of the "pool of qualified applicants" for the jobs at issue. *See Mandala*, 2019 WL 3237361 at *4 ("Plaintiffs have not alleged facts showing that Defendant's facially-neutral policy of not hiring convicted felons is related to the statistical disparity in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers in the pool of qualified applicants for Defendant's positions."). The Second Circuit then confirmed that Plaintiffs-Appellants needed to assert more than general population statistics to state a claim, as the District Court had held months prior. *See Mandala,* 975 F.3d at 205 ("But the fact that such a disparity exists among the general population does not automatically mean that it exists among the pool of applicants qualified for the jobs in question . . . In fact, because the complaint indicates that the positions that Plaintiffs applied for require certain educational and technical credentials, there is good reason to think that these national statistics are *not* representative of the qualified applicant pool.").

If that were not enough, in denying Plaintiffs-Appellants' Motion for Rehearing *En Banc,* the concurring judges explained that Plaintiffs-Appellants'

Complaint fell short of the longstanding plausibility "pleading standards as set forth by the Supreme Court and [the Second Circuit]," and that "neither the Supreme Court nor [the Second Circuit] has ever suggested that Title VII claims are somehow exempt from the plausibility standard." *See Mandala,* 988 F.3d at 669. Plaintiffs-Appellants offer absolutely no explanation for their failure to file a motion seeking leave to amend the Complaint to attempt to meet this longstanding pleading standard within a reasonable time following entry of judgment when they had been aware of that standard since at least 2018.

Moreover, the "new" statistic alleged by Plaintiffs-Appellants that they assert to (unsuccessfully) support their disparate impact claim was published in an article in 2006. (*See* JA124 at ¶ 57). Thus, this statistic was available when their Complaint was dismissed in 2019, and it was even available when they filed their Complaint in 2018. Plaintiffs-Appellants' argument that the District Court assumed that they "were aware of such statistics but intentionally chose not to cite them" (Pl. Br. at 14) completely misses the point. It is undisputed that this statistic was **publicly available** each time that Defendant-Appellee and the District Court made clear that Plaintiffs-Appellants' Complaint failed to satisfy the applicable pleading standard, and thus, it would have been possible for Plaintiffs-Appellants to rely on that statistic had they moved for or requested leave to amend at those times. In other words, this is **not** a case where new evidence provides good cause for a delay.

28

In addition, Plaintiffs-Appellants' contention that the District Court found that "plaintiffs must allege all potentially relevant 'publicly available' facts or arguments in their initial complaint" (Pl. Br. at 41) completely misrepresents the District Court's findings. In actuality, the District Court found that the fact that these statistics were publicly available for almost a decade prior to filing the complaint supports that "[g]iving due regard to Rule 15 . . . Plaintiffs could easily have protected themselves at several points in both the pre-trial and post judgment context by seeking leave to amend their complaint to offer more relevant statistics but made a strategic decision not to." (*See* JA313). Accordingly, Plaintiffs-Appellants have not, and cannot, show good cause or mitigating circumstances for their unreasonable delay in filing their Motion to Vacate Judgment. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2d Cir. 1994) ("An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief, . . . nor does the failure to marshall all known facts[.]"); *accord Anthony v. City of New York*, No. 00 CIV. 4688 (DLC), 2002 WL 731719, at *3 (S.D.N.Y. Apr. 25, 2002).

Importantly, this Court declined to grant Plaintiffs-Appellants' request for the panel to rehear and remand the case to the District Court to permit Plaintiffs-Appellants to amend their Complaint, a request made by Plaintiffs-Appellants for the first time in their Petition for *En Banc* and Panel Rehearing. (*See* JA217-18).

29

This fact further demonstrates that this Court did not agree (as Plaintiffs-Appellants suggest) that its decision created a change in pleading standard or in any other circumstance. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 466 F. Supp. 2d 560, 562–63 (S.D.N.Y. 2006) (rejecting plaintiff's argument that the Second Circuit's interpretation of a contract constituted a change in circumstances because that argument was "belied by the [Second Circuit's] decision, which did not remand the case to the district court to consider the effect of the allegedly changed circumstances or any other aspect"). Therefore, there has been no change in circumstances following the District Court's entry of final judgment that could possibly justify Plaintiffs-Appellants' unreasonable delay. Consequently, Plaintiffs-Appellants' Motion is time-barred, regardless of whether it is considered a Motion under Federal Rule of Civil Procedure 60(b)(1) or 60(b)(6).

C.    ***The District Court Did Not Abuse its Discretion by Holding that Plaintiffs-Appellants Failed to Demonstrate Extraordinary Circumstances***

The District Court also correctly determined that even if it were to assume that Plaintiffs-Appellants' Motion was a Rule 60(b)(6) motion and was timely (which, as explained above, it was not), Plaintiffs-Appellants failed to demonstrate that relief would be warranted because no extraordinary circumstances justify such relief. Rule 60(b)(6) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief" (Fed. R. Civ. P. 60(b)(6)),

30

and the motion cannot be based on one of the other grounds for relief identified in Rule 60(b). *See Stevens*, 676 F.3d at 67-68. Although broadly worded, Rule 60(b)(6) has "been narrowly cabined by the precedent of the Second Circuit." *Miller v. Norton*, No. 04-CV-3223 (CBA), 2008 WL 1902233, at *1 (E.D.N.Y. Apr. 28, 2008), *aff'd sub nom. Miller v. Kempthorne*, 357 F. App'x 384 (2d Cir. 2009) (internal citations omitted). As courts in this circuit have acknowledged, "Rule 60(b)(6) motions are disfavored." *Freeman v. Rochester Psychiatric Ctr.,* No. 6:12-CV-06045 (MAT), 2018 WL 1244479, at *1 (W.D.N.Y. Mar. 9, 2018); *see also Int'l Brotherhood of Teamsters,* 247 F.3d at 391.

It is axiomatic that "[s]ince [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer*, 793 F.2d at 61–62; *PRC Harris,* 700 F.2d at 897 (citing cases); *accord In re Optionable Sec. Litig.*, No. 07 CIV. 3753 (PAC), 2009 WL 1653552, at *2 (S.D.N.Y. June 15, 2009) ("Rule 60(b) reconsideration . . . is an extraordinary remedy that works against the interest of finality and should be applied only in exceptional circumstances."). The burden of proof rests on the movant to demonstrate that exceptional circumstances justifying such judicial relief exist. *Int'l Brotherhood of Teamsters,* 247 F.3d at 391. When considering a motion under Rule 60(b), courts in the Second Circuit also require that the movant "present 'highly convincing' evidence, 'show good cause for the failure to act sooner,' and show that 'no undue hardship [would]

be imposed on other parties.'" *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 40 (2d Cir. 2020) (internal citations omitted). The District Court properly found that Plaintiffs-Appellants cannot meet this exacting and extremely high standard in this case.

Plaintiffs-Appellants claim that they are entitled to this extraordinary relief because of the "highly unique procedural history of this case" (*See* Pl. Br. at 38); however, this case involves a decision of the District Court dismissing Plaintiffs-Appellants' Complaint under Federal Rule of Civil Procedure 12(b)(6), a decision of this Court affirming the District Court's decision, and a second decision of this Court denying Plaintiffs-Appellants' Petition for *En Banc* and Panel Rehearing. This procedural history is a far cry from "unique." In reality, Plaintiffs-Appellants are inappropriately relying on Rule 60(b) to get a **fourth** bite at the apple.

Further, the mere fact that in their decisions, the courts opined on the manner in which Plaintiffs-Appellants may have been able to (but failed to) allege a plausible claim is not unique, nor does it constitute an extraordinary circumstance. Further, Plaintiffs-Appellants' contention that "ten judges of this Court . . . agreed that Plaintiffs had identified facts that would permit them to plausibly state a claim for disparate impact race discrimination" (Pl. Br. at 17-18) is wholly inaccurate. Plaintiffs-Appellants' proposed Amended Complaint was never before this Court, this Court never reviewed the proposed Amended Complaint, and consequently, this

32

Court did not definitively state that Plaintiffs-Appellants proposed pleadings are legally sufficient. Indeed, this Court did not grant Plaintiffs-Appellants' request to remand the case to file an Amended Complaint, which they requested for the first time in their Petition for *En Banc* and Panel Rehearing. (*See* JA217-18).

Moreover, in their misguided effort to claim that the procedural history of this case is unique, Plaintiffs-Appellants attempt to rewrite history. Plaintiffs-Appellants claim that they "requested" leave to amend their Complaint in their opposition papers to the Motion to Dismiss. (*See* Pl. Br. at 28, 38). This is false. Plaintiffs-Appellants simply stated in a footnote in their opposition papers: "[E]ven if the Court were to credit any of [Defendant's] argument[s], each could be easily cured through a routine amendment to the Complaint." (*See* JA75). Plaintiffs-Appellants did **not** request leave to amend the Complaint in their papers, nor did they move for leave to amend, despite multiple opportunities to do so. In addition, Plaintiffs-Appellants did not provide any explanation as to how they would cure their deficient pleadings in their opposition papers, and "an amendment is not warranted 'absent some indication as to what [a party] might add to their complaint in order to make it viable.'" *Horoshko v. Citibank, N.A.,* 373 F.3d 248, 249-50 (2d Cir. 2004) (internal citation omitted) (holding the district court was "under no obligation to provide [plaintiff] with leave to amend" where they "simply ma[de] the conclusory assertion that 'the complaint can be amended to state a valid claim under the RICO Act'").

Plaintiffs-Appellants are represented by counsel from Outten & Golden LLP, who are well aware of how to request leave to amend.[8] Tellingly, Plaintiffs-Appellants' own statements completely contradict their current contention that they requested leave to amend; in Plaintiffs-Appellants' Memorandum of Law in Support of their Motion to Vacate, Plaintiffs-Appellants admitted that they had "**not** previously sought to amend the complaint." (*See* JA105).

Plaintiffs-Appellants' contention that the District Court's July 18, 2019 Decision "gave no indication that those statistics . . . (or indeed, any other national statistics) could cure the identified pleading deficiency" (*see* Pl. Br. at 39, 40) is likewise false. The District Court explained in its July 18, 2019 Decision that to state a plausible claim, the statistics relied upon must be related to the "pool of qualified applicants" for the relevant job positions. *Mandala*, 2019 WL 3237361 at *4. Indeed, Plaintiffs-Appellants actually admit that the District Court indicated that statistics related to Defendant-Appellee's "qualified applicant pool" could cure their pleading deficiency. (*See* Pl. Br. at 40). And, as Plaintiffs-Appellants made clear in their original Complaint, they were allegedly qualified for the positions at issue based on their educational and technical credentials. (*See* JA8, ¶¶ 24, 27, JA11, ¶

---

[8] To the extent that Plaintiffs-Appellants claim the District Court should have granted leave to amend *sua sponte*, that argument should be summarily rejected. As this Court has observed: "The contention that 'the District Court abused its discretion in not permitting an amendment that was never requested' [is] 'frivolous.'" *Williams*, 659 F.3d at 212 (citing *Horoshko,* 373 F.3d at 249-50).

50). Therefore, based on the District Court's July 18, 2019 Decision, Plaintiffs-Appellants could have requested leave to amend their Complaint to include statistics related to the qualified applicant pool, rather than statistics addressing the entire national population regardless of educational attainment or technical skills. Instead, they made the deliberate choice not to do so, and they proceeded with only their appeal, in an apparent attempt to use this as a bellwether case to create a lower pleading standard for disparate impact claims.

The District Court properly "decline[d] to use Rule 60(b) to relieve Plaintiffs from the consequences of [their] . . . litigation strategy," and denied Plaintiffs-Appellants' Motion. (*See* JA313). The District Court's holding is entirely in line with this Court's precedent, which has rejected attempts to use Rule 60(b) to relieve a party from the consequences of its own "free, calculated, deliberate choices." *Palacios*, 499 F. App'x at 56; *Bank of New York*, 14 F.3d at 759; *see also Abate*, 2019 WL 2409792 at *2-4 (denying plaintiffs' motion under Rule 60(b)(6) where plaintiffs filed the motion less than a month after the entry of final judgment, but plaintiffs were "on notice of [d]efendant's standing argument . . . soon after the filing of the [c]omplaint, and could have sought leave to add [the new entity] as a party" prior to entry of judgment); *DePasquale v. DePasquale*, No. 12-CV-2564 RRM MDG, 2013 WL 4010214, at *2 (E.D.N.Y. Aug. 5, 2013), *aff'd*, 568 F. App'x 55 (2d Cir. 2014) (denying plaintiff's Rule 60(b) motion where plaintiff "inject[ed]

35

facts he was aware of but failed to allege in the amended complaint, and ma[de] new arguments that could have previously been made"). As this Court has explained, the "failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from judgment." *Nemaizer*, 793 F.2d at 62.

Here, Plaintiffs-Appellants were on notice of the pleading deficiencies in their Complaint since at least the filing of Defendant-Appellee's Motion to Dismiss on November 13, 2018—just three months after Plaintiffs-Appellants filed their deficient Complaint. (*See* JA28-51). Plaintiffs-Appellants chose not to request leave to amend at that time. Plaintiffs-Appellants' improper reliance on general population statistics completely divorced from the relevant applicant pool was extensively discussed during oral argument before the District Court on June 27, 2019. (*See* JA171-185). Again, Plaintiffs-Appellants chose not to request leave to amend (even in the alternative), instead they insisted that they had satisfied the pleading standard. (*See* JA165). Even after the District Court issued its July 18, 2019 Decision dismissing the Complaint due to these pleading deficiencies, Plaintiffs-Appellants chose not to move to vacate the judgment and request leave to file an amended complaint.[9] (*See* JA265-66). Finally, even after this Court issued

---

[9] Mandala has filed a related state court action against Defendant-Appellee (*see* JA168-69 ¶¶ 26-28), in which he asserts substantially similar claims on behalf of a putative class. For this additional reason, Plaintiffs-Appellants cannot demonstrate that there are any extraordinary circumstances justify the relief of vacating the final judgment here, and accordingly, they cannot satisfy this requisite for relief under

its decision affirming the District Court's July 18, 2019 Decision and agreeing with the District Court that Plaintiffs-Appellants failed to state a plausible claim, Plaintiffs-Appellants still chose not to move to vacate the judgment and to request leave to replead. (*See* JA165). Instead, Plaintiffs-Appellants requested a rehearing *en banc*, which this Court also denied. (*See* JA165).

Now, after a series of losses, Plaintiffs-Appellants request that the final judgment be vacated (despite the fact that this Court affirmed the same). This hardly constitutes the "extraordinary circumstances" required under Second Circuit jurisprudence. Contrary to their baseless assertions, Plaintiffs-Appellants have had knowledge of the pleading deficiencies in the Complaint since at least three and a half years ago. Moreover, their proposed amendments rely on inapposite statistics having nothing to do with Defendant-Appellee (or even Plaintiffs-Appellants), and in any event, have been available since 2006. *See supra*, p. 28.

In short, Plaintiffs-Appellants had ample opportunity to move for leave to replead and made the deliberate choice not to do so. As the District Court properly

---

Rule 60(b)(6). *See Abate*, 2019 WL 2409792 at *3, n. 3 (explaining plaintiffs would not be "left without a remedy" because they filed a separate related case against defendant, and therefore, plaintiffs "failed to demonstrate how they would experience extreme hardship if their motion [to vacate] were denied"); *see also Brooks v. Doe Fund, Inc.*, No. 17CV3626PKCLB, 2020 WL 5706451, at *7 (E.D.N.Y. Sept. 24, 2020) (denying motion to vacate, stating plaintiff was "not entirely without recourse, as his state law claims asserting sex discrimination were dismissed without prejudice to refile in state court").

held, Plaintiffs-Appellants should not be permitted to take advantage of the extraordinary judicial relief provided by Rule 60(b)(6) to escape the consequences of their intentional litigation strategy. *See e.g., Nemaizer*, 793 F.2d at 62. In holding that Plaintiffs-Appellants failed to demonstrate extraordinary circumstances, the District Court also properly gave due regard to Rule 15 by recognizing that Plaintiffs-Appellants "could easily have protected themselves at several points in both the pre-trial and post-judgment context by seeking leave to amend their complaint" (JA313), and instead, they acted with dilatory motive and now request such relief only after undue delay. For this additional, independent reason, the District Court correctly denied Plaintiffs-Appellants' Motion to Vacate Judgment.

## II. **Because the District Court's December 6, 2021 Decision Should Be Affirmed, this Court Need Not Address Plaintiffs-Appellants' Additional Arguments, but Even If Considered, Plaintiffs-Appellants Are Not Entitled to Relief from Final Judgment**

Plaintiffs-Appellants urge this Court to reverse the District Court's December 6, 2021 Decision and grant them the extraordinary relief of vacating a final judgment based on the factors set forth in Federal Rule of Civil Procedure 15(a). (*See* Pl. Br. at 41). As explained above, Plaintiffs-Appellants misstate the applicable standard for vacating a judgment by omitting that a "party seeking to file an amended complaint post judgment must first have the judgment vacated or set aside." *See In re Buckskin*, 2021 WL 1081480 at *2. However, even if Plaintiffs-Appellants were permitted to file their proposed Amended Complaint, it would be immediately

38

subject to dismissal, and therefore, it would be a complete waste of judicial time and resources to permit them to file.

Pursuant to Rule 15(a), a request for leave to amend should be denied when there has been "undue delay, bad faith or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment[.]" *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015). In addition, a request for leave to amend should be denied in the case of futility. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

Where, as here, "the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactly." *State Trading Corp.,* 921 F.2d at 418; *see also Axar Master Fund,* 806 F. App'x at 40, n. 3. In such circumstances, "Rule 15's liberality must be tempered by considerations of finality[.]" *In re Buckskin*, 2021 WL 1081480 at *2.

## A. *Plaintiffs-Appellants Requested Leave to Amend Only After Undue Delay*

Plaintiffs-Appellants inexplicably claim that they "moved promptly to seek this relief" (Pl. Br. at 42); however, nothing is further from the truth. Plaintiffs-Appellants waited more than one year and eight months after the entry of judgment to move to vacate that judgment. (JA167). Further, Plaintiffs-Appellants waited over two years and four months after being placed on notice of the deficiencies in

their pleadings based on blackletter law to request leave to amend from the District Court. (*See* JA28-51, 95-112).

Courts "may deny a motion to amend when the movant knew or **should have known** of the facts upon which the amendment is based when the original pleading was filed[.]" *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) (emphasis added); *see also Brooks*, 2020 WL 5706451, at *8. Here, in their proposed Amended Complaint, Plaintiffs-Appellants seek to add references to an opinion of three professors concerning the prevalence of unequal treatment in the criminal justice system and a statistic from an article published in 2006. (JA124 at ¶¶ 56-57). Plaintiffs-Appellants' contention that such studies are not "widely known" (Pl. Br. at 41) does not change the fact that such information was published, publicly available, and discoverable prior to the filing of the Complaint. As explained above, Plaintiffs-Appellants have not offered any legitimate excuse for their intentional delay in filing a motion to vacate the final judgment or a motion for leave to file an Amended Complaint until 2021—over two and a half years after filing the Complaint. *See supra*, Point I(B)(ii).

### B. *Plaintiffs-Appellants are Acting in Bad Faith and With Dilatory Motive*

This case has been dismissed for over two years and nine months. Plaintiffs-Appellants chose to appeal the July 18, 2019 Decision dismissing the Complaint without moving to vacate the judgment and for leave to amend in the District Court.

(JA166).  Plaintiffs-Appellants also chose to request rehearing *en banc* after this Court affirmed the July 18, 2019 Decision, without moving to vacate the judgment and for leave to amend at that time.  (JA166).  Only now, after considerable time and expense, have Plaintiffs-Appellants decided to request leave to amend their Complaint to attempt to correct the deficiencies that the District Court identified back in July 2019, and that Defendant-Appellee identified in 2018.  Plaintiffs-Appellants make this request only after their multiple attempts to use this case to establish a lower pleading standard have failed.

Plaintiffs-Appellants' transparent gamesmanship and untimely attempt to resuscitate their claims in federal court, following the entry of a final judgment that was affirmed on appeal, demonstrates that they are acting with dilatory motive. Defendant-Appellee has been defending against these claims since 2018 in multiple actions.[10]   As the District Court correctly concluded: "There must be an end to litigation someday."  (*See* JA314 (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).

## C.   *Plaintiffs-Appellants' Proposed Amendments are Futile*

The fact that an "amended pleading offered by the movant will not cure the defects in the original pleading that resulted in the judgment of dismissal may be a

---

[10] For example, Plaintiffs-Appellants make this request even though Mandala has the opportunity to pursue identical state law claims in the state court action that is currently pending.  (JA168-69 ¶¶ 26-28).

41

valid reason both for denying a motion to amend under Rule 15(a) and for refusing to reopen the judgment under Rule 60(b)." *Brook v. Simon*, No. 17 CIV. 6435 (GBD), 2018 WL 6518855, at *1 (S.D.N.Y. Nov. 27, 2018). A plaintiff's request for leave to amend must be denied if the amendment would be futile. *E.g., Burch*, 551 F.3d at 126. An amendment is futile "if the proposed claim could not withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6)." *Lucente v. International Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

In the context of a Title VII disparate impact claim, as this Court explained in its opinion in this case, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala,* 975 F.3d at 207. To survive a motion to dismiss, the plaintiff must "assert [enough] nonconclusory factual matter . . . to nudge [her] claim[ ] across the line from conceivable to plausible to proceed." *Id.* at 208 (internal citations omitted)). As this Court held, a "statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups." *Id.* at 210. Where, as here, general population statistics do **not** accurately reflect the qualified applicant pool, "relying on them to show a disparate impact is a bit like relying on apples to study oranges." *Id.* at 211.

In their papers, Plaintiffs-Appellants now heavily rely on the statistic that "Black men with **some college education** have **imprisonment risks** that are seven

(7) times greater than white men with **some college education**" (*see* JA124 (emphasis added)); however, this proposed allegation does not make Plaintiffs-Appellants' claims plausible because this statistic has absolutely nothing to do with Defendant-Appellee, its purported policies, or its applicant pool. First, this statistic does not relate to the alleged criminal conviction policy that Plaintiffs-Appellants challenge (*see* JA5 ¶ 4), and instead, it addresses "imprisonment risks." *See EEOC v. Freeman,* 961 F. Supp. 2d 783, 798 (D. Md. 2013), *aff'd in part* 778 F.3d 463 (4th Cir. 2015) (explaining statistics are not applicable when they "relate to things that are not even considered under Defendant's hiring criteria, such as arrest and incarceration rates").

Second, this statistic is devoid of any connection to the relevant comparator pool. As this Court properly explained, Plaintiffs-Appellants must provide allegations demonstrating that the statistics are "representative of the pool of potential applicants qualified for a position [with Defendant-Appellee]" to state a plausible claim. *Mandala,* 975 F.3d at 211. Plaintiffs-Appellants fail to allege any facts to support that a pool of individuals with "some college education" accurately reflects the pool of qualified job applicants in question. Indeed, Barnett has attained far more than "some college education;" as Plaintiffs-Appellants alleged in their Complaint, he has a master's degree (*see* JA11 ¶ 50)—a fact Plaintiffs-Appellants deceptively omit from their proposed Amended Complaint (*see* JA119-21).

43

Accordingly, like the other statistics cited in Plaintiffs-Appellants' original Complaint and the proposed Amended Complaint, this statistic concerning the "imprisonment risks" of individuals with "some college education" has no application to Plaintiffs-Appellants' claims.

In sum, Plaintiffs-Appellants' proposed Amended Complaint fails to correct the fundamental flaw in their pleadings. The "sheer possibility" of a racial imbalance in Defendant-Appellee's workforce as a result of an alleged neutral policy is insufficient to survive a motion to dismiss. Otherwise, virtually every employer could be subject to a nationwide class action based on nothing more than general population statistics having nothing to do that that employer or its applicant pool. Such a result would be inequitable and completely undermine the judicial process.

Because Plaintiffs-Appellants' request for leave to amend should be denied due to their bad faith, dilatory motive, and undue delay as well as the proposed amendment's futility, this Court should not disturb the District Court's well-reasoned December 6, 2021 Decision denying Plaintiffs-Appellants' Motion to Vacate Judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Appellee respectfully requests this Court deny Plaintiffs-Appellants' appeal and affirm the District Court's denial of Plaintiffs-Appellants' Motion to Vacate Judgment Under Rule 60(b).

Dated: May 13, 2022                    **LITTLER MENDELSON, P.C.**

By:  */s/ Abigail L. Giarrusso*
Jacqueline Phipps Polito
Abigail L. Giarrusso
375 Woodcliff Drive
Fairport, NY 14450
Telephone: (585) 203-3400
Facsimile: (585) 203-3414
Email: jpolito@littler.com
Email: agiarrusso@littler.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Circuit's Local Rule 32.1(a)(4)(A) because it contains no more than 10,558 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, and is in Times New Roman, 14-point font.

Dated: May 13, 2022        **LITTLER MENDELSON, P.C.**

By:   _/s/ Abigail L. Giarrusso_
Abigail L. Giarrusso
375 Woodcliff Drive
Fairport, NY 14450
Telephone: (585) 203-3400
Facsimile: (585) 203-3414
Email: agiarrusso@littler.com