# 22-4

IN THE

# United States District Court of Appeals

## FOR THE SECOND CIRCUIT

GEORGE MANDALA and CHARLES BARNETT,
individually and on
behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

NTT DATA, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR THE PLAINTIFFS-APPELLANTS

OSSAI MIAZAD
CHRISTOPHER M. MCNERNEY
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

*Attorneys for Plaintiffs-Appellants*

SAMUEL SPITAL
RACHEL M. KLEINMAN
TIFFANI BURGESS
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

*Attorneys for Plaintiffs-Appellants*

MOIRA HEIGES-GOEPFERT
OUTTEN & GOLDEN LLP
One California, 12TH Floor
San Francisco, CA 94111
(415) 223-7847

*Attorney for Plaintiffs-Appellants*

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

ARGUMENT .........................................................................................4

    I.     Plaintiffs' Rule 60(b)(6) Motion Is Timely..........................................5

          A.    Plaintiffs Sought to Amend Their Complaint at the Earliest

                Possible Time ..........................................................................5

          B.    The District Court Abused Its Discretion in Disregarding or

                Misapplying *Foman* and Its Progeny ..........................................8

          C.    Plaintiffs' Motion Is Properly Construed Under Rule 60(b)(6),

                Not 60(b)(1) ...........................................................................13

    II.    Plaintiffs Established Extraordinary Circumstances...........................16

CERTIFICATE OF COMPLIANCE........................................................23

CERTIFICATE OF SERVICE ...............................................................24

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE(S)**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000) .................................................................21

*Abate v. Fifth Third Bank*,
    No. 13 Civ. 9078, 2019 U.S. Dist. LEXIS 96044 (S.D.N.Y. June 6, 2019) ......18

*Ackermann v. United States*,
    340 U.S. 193 (1950)..........................................................................................17

*Brown v. Burnside*,
    109 F.R.D. 412 (E.D.N.Y. 1986)......................................................................15

*Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*,
    434 U.S. 412 (1978)..........................................................................................19

*Depasquale v. Depasquale*,
    No. 12 Civ. 2564, 2013 U.S. Dist. LEXIS 109712 (E.D.N.Y. Aug. 5, 2013)....18

*Dorchester Fin. Sec. v. Banco BRJ, S.A.*,
    No. 02 Civ. 7504, 2011 U.S. Dist. LEXIS 158952 (S.D.N.Y. Feb. 23, 2011)...17

*Foman v. Davis*,
    371 U.S. 178 (1962)...............................................................................3, 8, 21

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    756 F.2d 230 (2d Cir. 1985) .............................................................................11

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016) ..........................................................................8, 11

*Kotlicky v. U.S. Fid. & Guar. Co.*,
    817 F.2d 6 (2d Cir. 1987) .................................................................................10

*LeBlanc v. Cleveland*,
    248 F.3d 95 (2d Cir. 2001) ..........................................................................9, 16

*Long v. Carberry*,
    151 F.R.D. 240 (S.D.N.Y. 1993) ......................................................................15

iv

*Mandala v. NTT Data, Inc. ("Mandala I")*,
   975 F.3d 202 (2d Cir. 2020) ................................................................2, 6, 7, 20

*Mandala v. NTT Data, Inc.* ("*Mandala II*"),
   988 F.3d 664 (2d Cir. 2021) ........................................................*passim*

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
   970 F.3d 133 (2d Cir. 2020) ........................................................*passim*

*Mirkin v. Xoom Energy, LLC*,
   931 F.3d 173 (2d Cir. 2019) ............................................................11

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986) ............................................................18

*New York v. Green*,
   420 F.3d 99 (2d Cir. 2005) ............................................................13

*Nin v. Cnty. of Suffolk*,
   No. 21 Civ. 818, 2022 U.S. App. LEXIS 5353 (2d Cir. Mar. 1, 2022)..............16

*Palacios v. Coca-Cola Co.*,
   499 F. App'x 54 (2d Cir. 2012) ......................................................18

*Pena v. Recore*,
   12 F. App'x 62 (2d Cir. 2001) ........................................................13

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993).......................................................................15

*Polit v. Glob. Foods Int'l Corp.*,
   No. 14 Civ. 7360, 2016 U.S. Dist. LEXIS 19085 (S.D.N.Y. Feb. 17, 2016).....16

*Porat v. Lincoln Towers Cmty. Ass'n*,
   464 F.3d 274 (2d Cir. 2006) ............................................................13

*Simone v. Prudential Ins. Co. of Am.*,
   No. 04 Civ. 2076, 2005 U.S. Dist. LEXIS 10324 (S.D.N.Y. May 27, 2005) ....18

*Stevens v. Miller*,
   676 F.3d 62 (2d Cir. 2012) ............................................................15

*Stone v. I.N.S.*,
514 U.S. 386 (1995)...............................................................................9

*United Airlines, Inc. v. Brien*,
588 F.3d 158 (2d Cir. 2009) ...............................................................16

*United States v. Bank of America*,
14 F.3d 756 (2d Cir. 1994) .................................................................18

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) .......................................................*passim*

## <u>INTRODUCTION</u>

Plaintiffs brought claims on behalf of themselves and a similarly situated class alleging that NTT's policy of rejecting individuals with criminal convictions disparately impacts Black applicants due to racial discrimination in the criminal justice system, which has resulted in racially disproportionate arrest and conviction rates. The substance of these civil rights claims has not yet been heard by a court, nor will it be, if Plaintiffs are not granted Rule 60 relief. The circumstances presented by Plaintiffs' Rule 60 motion ("Motion") are extraordinary, while the relief requested—an opportunity to replead—is minimal.

As explained in Plaintiffs' opening brief, the district court abused its discretion in denying Plaintiffs' Motion as untimely and finding that Plaintiffs could not establish extraordinary circumstances. *First*, while the district court found that Plaintiffs could (and should) have sought earlier leave to amend, a motion for leave to amend prior to appeal would have been futile in light of both the district court's own reasoning and its explicit dismissal of Plaintiffs' original complaint with prejudice. The district court found that Plaintiffs had not met their pleading burden because they had not pleaded a "statistical disparity in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers in *the pool of qualified applicants* for Defendant's positions," and therefore, Plaintiffs' statistics did not sufficiently demonstrate that

1

NTT's hiring policy had a disparate impact on qualified Black applicants. JA93-94 (emphasis added). But Plaintiffs reasonably believed it would have been futile to amend to add those statistics. As Judge Chin explained, "information as to NTT's 'pool of qualified job applicants' . . . is not something that would be readily available without discovery." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 217 (2d Cir. 2020) ("*Mandala I*") (Chin, J., dissenting). The district court also granted NTT's motion to dismiss with prejudice, even though Plaintiffs had raised the prospect of an amended complaint to address any perceived pleading deficiency in their opposition brief. Rather than filing a futile motion for leave to amend resulting in further delay, Plaintiffs acted promptly and reasonably by appealing the district court's decision.

This Court's decisions on appeal and in response to Plaintiffs' petition for *en banc* review clarified for the first time that Plaintiffs could plausibly plead their claims by including allegations demonstrating that racial disparities in conviction rates persist even as education levels rise. *Id.* at 212 (Sullivan, J.); *Mandala v. NTT Data, Inc.*, 988 F.3d 664, 668 (2d Cir. 2021) ("*Mandala II*"). Specifically, each of the written opinions concurring with or dissenting from the denial of rehearing *en banc* acknowledged that, had Plaintiffs pleaded statistics showing the existence of racial disparities in criminal convictions among college-educated

2

individuals, they likely would have satisfied their burden,[1] and four members of this Court specifically encouraged Plaintiffs to seek Rule 60 relief to file an amended complaint incorporating such allegations.[2]

*Second*, the district court's timeliness analysis cannot be reconciled with *Foman v. Davis*, 371 U.S. 178, 182 (1962) and a line of Second Circuit cases, which require that trial courts balance relevant Rule 15 and Rule 60 factors and, absent demonstrable prejudice or other misconduct, regularly provide plaintiffs at least one opportunity to amend to allow their claims to be heard on the merits. The district court's failure to give effect to this controlling authority, while privileging finality over all other Rule 60 and 15 considerations, was reversable error.

---

[1] See *Mandala II*, 988 F.3d at 668 (Sullivan, J. and Nardini, J., concurring with denial of en banc) (Plaintiffs could have satisfied standard by alleging "national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain" and further specifying that Amici's data showing elevated rates of imprisonment among educated African-American men are "the very figures that might have rendered Plaintiffs' claims plausible"); id. at 670-71 (Pooler, J., dissenting from denial of en banc) (acknowledging persuasive value of additional statistics, while also finding that Plaintiffs' original national statistics would have been sufficient); id. at 672-78 (Chin, J., dissenting from denial of en banc) (same); id. at 683 (Lohier, J., dissenting from denial of en banc) (joining opinions of Judge Pooler and Judge Chin).

[2] *Id.* at 671 (Pooler, J., dissenting from denial of *en banc*) ("I encourage . . . Plaintiffs here to move under Rule 60 for relief from the district court's judgment in order to file an amended complaint that includes statistics incorporating the continued racial gaps in conviction rates as education levels rise").

*Finally*, the district court improperly discounted the extraordinary circumstances presented by this appeal, including that ten *en banc* judges recognized that Plaintiffs had identified statistics that likely satisfied their pleading burden, dissents joined by five judges expressed concerns that Plaintiffs had not had a fair opportunity to plead their claims, and dissents joined by four judges expressly encouraged Plaintiffs to seek leave to amend via Rule 60. *See* Opening Brief for Plaintiffs-Appellants ("Pls.' Br.") at 12 (citing *Mandala II*).

The district court's unwarranted denial of Rule 60 relief forever closes the courthouse doors on substantive review of the important (and plausible) civil rights claims raised by Plaintiffs, without a merits hearing or even discovery. Doing so under circumstances where Plaintiffs moved promptly and reasonably to litigate and appeal, and yet were not afforded any viable prior opportunity to amend, constitutes extreme hardship and extraordinary circumstances under this Court's precedent.

Accordingly, the district court's denial of Plaintiffs' Motion should be reversed.

## **ARGUMENT**

The district court's holding that Plaintiffs are precluded from obtaining Rule 60(b)(6) relief because they chose to appeal the adverse decision dismissing their claims with prejudice, rather than immediately seeking leave to amend, "cannot be

4

located within the range of permissible decisions." *Williams v. Citigroup Inc.*, 659

F.3d 208, 212-14 (2d Cir. 2011) (citation omitted) (vacating denial of post-

judgment motion for leave to replead because of plaintiff's purported failure to

seek earlier leave to amend). Plaintiffs' Motion was timely, and the circumstances

that led to its filing were extraordinary.

## I.     Plaintiffs' Rule 60(b)(6) Motion Is Timely.

The district court's primary basis for denying Plaintiffs' Motion was that it

was "not timely" because, in the district court's view, Plaintiffs should have sought

earlier leave to amend, and thus did not establish "extraordinary circumstances."

JA304, 308, 313. This was an error of both fact and law. *See* Pls.' Br. at 17.

### A.     Plaintiffs Sought to Amend Their Complaint at the Earliest Possible Time.

On the facts, Plaintiffs moved expeditiously to advance the litigation at

every stage. Plaintiffs timely opposed NTT's motion to dismiss, requested *en banc*

review, and promptly filed their Motion 29 days after the Second Circuit mandate

issued following the *en banc* decision. In taking these actions, Plaintiffs pursued

the most reasonable and efficient course available to them.

*First*, according to the district court, Plaintiffs' claims failed in part because

Plaintiffs did not adequately relate NTT's hiring bar to a "statistical disparity in the

numbers of African-Americans . . . convicted of crimes in proportion to their

representative numbers in *the pool of qualified applicants* for Defendant's

5

positions." JA93 (emphasis added). But statistical data concerning NTT's "'pool of qualified job applicants' . . . is not something that would be readily available without discovery." *Mandala*, 975 F.3d at 217 (Chin, J., dissenting).

Based on the district court's decision and the inaccessibility of NTT's applicant data, Plaintiffs reasonably believed it would have been futile to amend.[3] Indeed, in denying Plaintiffs' Motion, the district court again endorsed NTT's arguments, and affirmed its holding that Plaintiffs were required to show racial disparities among NTT's *pool of qualified applicants*. JA310-13 (recounting dismissal of Plaintiffs' claims due to their failure to allege facts relating "[NTT]'s facially-neutral policy" to "*the statistical disparity* in the numbers of African-Americans arrested and convicted of crimes in proportion to their representative numbers *in the pool of qualified applicants for Defendant's positions*.") (emphasis added). Underscoring this point, even now, NTT argues that Plaintiffs' proposed

---

[3] Specifically, the district court found that Plaintiffs failed to plausibly state a claim because they did not relate NTT's hiring bar "to the *statistical disparity in the numbers of African-Americans . . . convicted of crimes . . . in the pool of qualified applicants* for Defendant's positions . . . In contrast [to height and weight differences among men and women], general statistics are inadequate to show a relationship between the "*pool of applicants who are Caucasian versus African Americans and their respective rates of felony convictions.*"). JA93-94 (emphasis added); JA93 (Plaintiffs' statistics are inadequate because they "do not indicate whether the individuals in the general population cited *shared qualifications that would make them viable candidates* for either of the positions offered to Plaintiffs") (emphasis added).

Amended Complaint does not plausibly allege a claim of discrimination because "general population statistics [even those reflecting college-educated individuals] do **not** accurately reflect the qualified applicant pool," Brief for Defendant-Appellee ("Opp. Br.") at 42, begging the question as to *what* NTT imagines Plaintiffs could have sought to add to the complaint prior to appeal (and indeed prior to discovery). *See also id*. at 26-27 (to survive dismissal, Plaintiffs would have had to specifically plead "statistics supporting that African Americans *with this technical skill set* are convicted of felonies at a higher rate than other racial groups" (quoting JA36) (emphasis added)).

*Second*, while Plaintiffs did not prevail on appeal, it was through the appeal process and the subsequent denial of rehearing *en banc* that this Court clarified that there was information on which Plaintiffs could rely, outside of applicant pool data, that would allow them to plausibly state a claim for relief. *See* Pls.' Br. at 28. Specifically, this Court expressed "sensitiv[ity] to the fact that Plaintiffs are undoubtedly working from an informational disadvantage," and held that Plaintiffs could rely on national statistics if they can explain "why those statistics can plausibly be expected to hold true for the qualified applicant pool in question," explaining that Plaintiffs could have met their burden by "provid[ing] *additional allegations to explain why their chosen national statistics are in fact likely to be representative* of NTT's qualified applicant pool." *Mandala I*, 975 F.3d at 212

(emphasis added); *see also Mandala II*, 988 F.3d at 668 (Sullivan, J., and Nardini, J., concurring with denial of *en banc*) (specifying that statistics showing elevated rates of imprisonment among college-educated African-American men are "the very figures that might have rendered Plaintiffs' claims plausible"). After the Court provided this guidance, Plaintiffs promptly sought Rule 60 relief and requested leave to amend their complaint.

**B.    The District Court Abused Its Discretion in Disregarding or Misapplying *Foman* and Its Progeny.**

On the law, the district court's holding that Plaintiffs' Motion was untimely cannot be reconciled with the unbroken line of cases, cited by Plaintiffs in their opening brief, holding that the failure to seek prior leave to amend in the course of litigation *does not*, in the absence of other prejudicial circumstances, constitute "undue delay." Pls.' Br. at 22-25; *see also Foman*, 371 U.S. at 182 ("[R]efusal to grant the leave [to amend] without any *justifying reason* . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.") (emphasis added); *Williams*, 659 F.3d at 214 (Under *Foman*, the failure to seek amendment prior to entry of judgment does not constitute "*undue delay*" or any other "*justifying reason*" for denying amendment) (emphasis added). Rather, as these cases explain, a plaintiff should ordinarily be provided with at least one opportunity to replead. *See* Pls.' Br. at 22-25 (discussing, *inter alia*, *Foman*, *Williams*, *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir.

8

2016), and *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc*., 970 F.3d 133 (2d Cir. 2020)) (hereinafter "the *Foman* cases"); *see also* Pls.' Br. at 30-32.[4]

NTT focuses on the distinction between pre- and post-judgment requests to amend, Opp. Br. at 16-19, but the *Foman* cases "make clear" that "considerations of finality do not always foreclose the possibility of amendment, even when leave to replead is not sought until after the entry of judgment." *Williams*, 659 F.3d 213; *see also id.* at 214 ("*Foman* . . . cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered.").

It is for this reason that courts "must balance" both finality interests *and* "the policy in favor of hearing a litigant's claims on the merits" as set forth in Rule 15.

---

[4]     In contrast, the rule espoused by NTT, pursuant to which plaintiffs have no "obligation to seek leave to replead . . . immediately upon" the grant of a motion to dismiss, *Williams*, 659 F.3d at 214, but thereafter are precluded from seeking leave to replead if they first appeal, runs counter to the spirit and letter of the *Foman* cases. *See Metzler*, 970 F.3d at 144 (noting "abuse of discretion" in denying post-judgment relief under *Foman* to prevent a "manifest injustice," when the "plaintiff was never given an opportunity to replead in the first place"); *cf. Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) ("Either before *or after filing his appeal*, the litigant may also file a Rule 60(b) motion for relief with the district court.") (emphasis added); *LeBlanc v. Cleveland*, 248 F.3d 95, 101 (2d Cir. 2001) (reversing *post-appeal* denial of Rule 60(b)(6) motion where plaintiff would "be left without a remedy if the motion were not granted"). As this Court noted in *Metzler*, despite differences in the timing, the application of Rule 59 or 60, and the availability of earlier amendment, the *Foman* cases are consistent in that each reversed cases dismissed unjustifiably with prejudice, so as to give plaintiffs at least one opportunity to replead. 970 F.3d at 145.

*Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987); *Williams*, 659 F.3d at 213 ("postjudgment motions for leave to replead *must* be evaluated with *due regard* to *both* the value of finality *and the policies embodied in Rule 15*") (emphasis added). Rule 15 provides that leave to amend should be granted absent a "good reason" warranting denial, namely undue delay, bad faith, "repeated failure to cure deficiencies by amendments previously allowed," undue prejudice or futility. Pls.' Br. at 30-32 (citing cases). None of these reasons are present here, yet the district court gave Rule 15 no regard, instead focusing solely on the interests of finality. NTT's opposition implicitly acknowledges this failure. Opp. Br. at 19, 29, 38-39 (collapsing the Rule 15 factors and repeatedly asserting that the district court gave "due regard" to them all by making the sole (and erroneous) finding that Plaintiffs "unduly delayed" in requesting leave to amend). This was a material error because the Rule 15 factors plainly weigh in Plaintiffs' favor and, had they been considered, should have altered the district court's decision. *See* Pls.' Br. at 30-32 (describing absence of any undue delay, bad faith, failure to cure deficiencies by amendments previously allowed, undue prejudice or futility).

Finally, NTT suggests that *Foman* is distinguishable because it was decided under Rule 59(e), rather than Rule 60, Opp. Br. at 17, but this Court has consistently applied the principles of *Foman* to cases under Rule 60 without distinguishing between the two Rules. *See Williams*, 659 F.3d at 213-14 (reversing

10

denial of Rule 59(e) and Rule 60(b) motions based on *Foman* and holding "postjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15" without distinguishing between the Rules upon which the post-judgment motion is based); *SAIC*, 818 F.3d at 92 (reversing denial of Rule 59(e) and Rule 60(b) motion, citing *Williams*); *Mirkin v. Xoom Energy, LLC*, 931 F.3d 173, 178 (2d Cir. 2019) (reversing denial of Rule 59(e) and Rule 60(b) motion, citing *Foman*); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985) (same); *see also Metzler*, 970 F.3d at 145-46 (summarizing this Circuit's case law and concluding that in the "post-judgment context," this Court has "ensur[ed] plaintiffs at least one opportunity to replead," without distinguishing between the Rules upon which the post-judgment motion is based).

Thus, as a matter of law, Plaintiffs' Motion was not untimely simply because it was brought under Rule 60, after dismissal and appeal. This is especially relevant because NTT's *only* substantive means of attempting to distinguish the *Foman* cases is by arguing that Plaintiffs took longer to seek amendment than in those cases due to the time spent on appeal. Opp. Br. at 17-18 (arguing that plaintiffs in the *Foman* cases sought relief within 14 to 33 days, whereas here, Plaintiffs filed their Motion, immediately following appeal, one year and eight months after judgment). But while timing is clearly germane to the analysis,

nothing in the *Foman* cases suggests that the length of time between judgment and a motion for relief is dispositive of whether a delay is "undue." NTT's position also ignores the specific context described in Plaintiffs' moving brief establishing that Plaintiffs promptly moved to amend at the earliest opportunity practicable. *See* Pls.' Br. at 29-33; *see also supra* Section I(A).

While NTT argues Plaintiffs are trying to establish a "per se rule" that "failure to amend earlier" cannot be a "'justifying reason' for denying post-judgment relief," Opp. Br. at 18, Plaintiffs have done no such thing.[5] Rather, Plaintiffs argue that, *in this case*, the district court abused its discretion by disregarding the extraordinary circumstance presented here by: (a) finding Plaintiffs had earlier opportunities to seek to amend even though the district court did not allow Plaintiffs an opportunity to cure any deficiencies through amendment and dismissed the complaint with prejudice, leaving Plaintiffs with no plausible route for amendment under its articulated standard;[6] (b) determining that Plaintiffs

---

[5] The district court made a similar error in denying Plaintiffs' Motion in part based on its finding that *Metzler* does not create a blanket rule that "all plaintiffs are guaranteed the right to amend their pleadings at least once in the post-judgment context." JA304 n.1. That plaintiffs are not always guaranteed a right to amend post-judgment (for example, where amendment would be futile, or where plaintiffs waited until the eve of trial, or months or years after the conclusion of litigation to seek relief) does not prove an opposite extreme rule, that plaintiffs who appeal first can never be entitled to post-judgment relief.

[6] As noted in Plaintiffs' Opening Brief, Plaintiffs initially sought an opportunity to amend in a footnote to their opposition to NTT's motion to dismiss,

intentionally delayed in seeking leave to amend, when in fact Plaintiffs moved at the first viable opportunity to do so; and (c) failing to apply this Court's precedent requiring consideration of Rule 15 factors and the importance of hearing cases on the merits. *See Williams*, 659 F.3d at 213; *Metzler*, 970 F.3d at 143-47; *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (noting, in post-judgment context, this Court's "strong preference" that claims be considered on their merits).

To be sure, Rule 60 relief may not be warranted in every case where a plaintiff was denied any leave to amend. But here, it is warranted.

### C.     Plaintiffs' Motion Is Properly Construed Under Rule 60(b)(6), Not 60(b)(1).

The district court further erred by finding that Plaintiffs' Motion should have been filed under Rule 60(b)(1), and thus is untimely. Plaintiffs' decision to appeal the district court's dismissal of their complaint, rather than first seeking leave to

---

stating that, if the district court credited NTT's arguments, a routine amendment could cure the issue. *See* Pls.' Br. at 5; JA75; *see also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (explaining that "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend" (collecting cases)). Nonetheless, the district court disregarded Plaintiffs' request and dismissed with prejudice, denying Plaintiffs the opportunity to replead and implying that amendment would be futile. *See* JA94; *see also Pena v. Recore*, 12 F. App'x 62, 63 (2d Cir. 2001) (noting leave to file an amended complaint is normally granted "unless an amendment would be futile") (citing *Foman*, 371 U.S. at 182).

amend, was not a "mistake" under Rule 60(b)(1).  As described *supra*, amendment would have been futile prior to the guidance provided by this Court on appeal.

Further, the fact that Plaintiffs did not allege non-public statistics reflecting racial disparities in conviction rates among NTT's "qualified applicant pool," as required by the district court, or otherwise allege discoverable (but not readily searchable or accessible) statistics regarding incarceration rates among college-educated individuals *in their initial complaint* was also not a "mistake" covered by Rule 60(b)(1).[7]  Highlighting this point, neither the district court nor NTT identifies a single case that presents a remotely analogous situation—let alone a single case finding that a failure to amend at the earliest opportunity is a "mistake" for purposes of Rule 60(b)(1), particularly where doing so would have been futile.

---

[7] While both the district court, (JA306-07) and NTT (Opp. Br. at 21) fault Plaintiffs for failing to meet a purportedly unambiguous pleading standard, five of the ten reviewing Second Circuit judges found that the national statistics cited in Plaintiffs' original complaint *were sufficient* to plead a disparate impact claim, demonstrating that the standard, *as applied here*, was not "unambiguous." *Mandala II*, 988 F.3d at 670 (Pooler, J., dissenting from denial of *en banc*, joined by Lohier, J., Chin, J., and Carney, J.) (finding it "certainly plausible" that Plaintiffs' "general population statistics are reflective" of NTT's applicant pool); *id.* at 678 (Chin, J., dissenting from denial of *en banc*, joined by Pooler, J., Katzman, J., Lohier, J., and Carney, J.) ("[P]laintiffs' reliance on national statistics at the pleadings stage was eminently reasonable, and the national statistics surely made plaintiffs' claims of disparate impact discrimination even more plausible"); *cf. id.* at 683 (Lohier, J., dissenting from denial of *en banc*, joined by Pooler, J., Katzman, J., Chin, J., and Carney, J.) ("[m]ark[ing] the panel majority's decision as one that will need to be revisited and corrected by us, or by Congress, in the future" because it subjects plaintiffs to an "arbitrarily high" standard).

At most, the cases relied on by NTT reflect narrowly cabined situations where the plaintiff sat on their rights. *See Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 390 (1993) (inadvertently failing to file proof of claim within deadline set by bankruptcy court); *Long v. Carberry*, 151 F.R.D. 240, 243 (S.D.N.Y. 1993) (missing deadline to respond to motion to dismiss); *Stevens v. Miller*, 676 F.3d 62, 70 (2d Cir. 2012) (failing to apprise the court of change in controlling law); *Brown v. Burnside*, 109 F.R.D. 412, 43 (E.D.N.Y. 1986) (failing to prosecute claims and taking no action for almost four years after dismissal). Unlike in those cases, Plaintiffs did not miss a court-ordered deadline or fail to apprise a court of a change in controlling law; on the contrary, Plaintiffs vigorously pursued and prosecuted their claims at the trial court and through the appellate process.

NTT also cites *Metzler* in its opposition, but that case reinforces Plaintiffs' point. *Cf.* Opp. Br. at 16. There, the plaintiffs sought a *fourth opportunity* to amend their complaint. *Metzler*, 970 F.3d at 147. Here, Plaintiffs were not given a single such opportunity. If *Metzler* identifies an outer boundary whereby Rule 15's liberal spirt is tempered by a plaintiff's repeated failure to plead plausibility, this logic also implicitly accepts that the liberal federal policy of amendment applies with more force when a plaintiff has not been granted prior leave. And as *Metzler* makes clear, the relevant analytical framework is not whether a plaintiff was

"mistaken" in their initial allegations, but rather whether justice requires that the plaintiff be provided with an additional opportunity to state a claim, consistent with the liberal spirit of Rule 15 as tempered by Rule 60.

## II. Plaintiffs Established Extraordinary Circumstances.

The elimination of Plaintiffs' claims without a hearing on the merits or opportunity to amend, particularly given the unique history of this case, constitutes extraordinary circumstances under Rule 60(b)(6). *See United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (Rule 60(b)(6) properly invoked "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship"); *LeBlanc v. Cleveland*, 248 F.3d 95, 101 (2d Cir. 2001) (extraordinary circumstances demonstrated where "plaintiff would be left without a remedy if the [Rule 60(b)(6)] motion were not granted"); *Nin v. Cnty. of Suffolk*, No. 21 Civ. 818, 2022 U.S. App. LEXIS 5353, at *5 (2d Cir. Mar. 1, 2022) (granting 60(b)(6) motion, noting, "we view Plaintiffs-Appellants' lost opportunity for a decision on the merits of their claims as an extreme hardship"); *cf. Metzler*, 970 F.3d at 144 (noting "abuse of discretion" in denying post-judgment relief under *Foman* to prevent a "manifest injustice," when the "plaintiff was never given an opportunity to replead in the first place").[8]

---

[8]     *See also Polit v. Glob. Foods Int'l Corp.*, No. 14 Civ. 7360, 2016 U.S. Dist. LEXIS 19085, at *3-*4 (S.D.N.Y. Feb. 17, 2016) (plaintiff would suffer extreme

NTT (like the district court) fails to acknowledge or address the extraordinary circumstances presented here. NTT's only retort is that Plaintiff Mandala cannot demonstrate extraordinary circumstances because he has filed a related state court action against NTT. Opp. Br. at 36 n. 9. However, the state court action does not assert federal claims, and without post-judgment relief, Plaintiff Barnett and putative class members outside the State of New York will not have access to any form of relief.

Against the clearly analogous and persuasive line of cases following *Foman* in granting post-judgment leave to amend, the district court adhered solely to inapposite and distinguishable cases that could not be farther removed from the nascent posture here—a pleading stage dismissal made prior to discovery, without any opportunity to amend, and with prejudice. In some cases relied on by the district court, the petitioners sought to re-open a judgment late into the proceedings, including post-trial, and after their right to appeal had expired. *See Ackermann v. United States*, 340 U.S. 193, 198 (1950) (denying Rule 60(b) motion where movant sought relief more than four years after entry of judgment following

---

hardship where, to deny 60(b) motion would "deny [plaintiff] his day in any judicial or arbitral forum"); *Dorchester Fin. Sec. v. Banco BRJ, S.A.*, No. 02 Civ. 7504, 2011 U.S. Dist. LEXIS 158952, at *2 (S.D.N.Y. Feb. 23, 2011) ("Petitioner has demonstrated extraordinary circumstances because . . . [he] would be left without a remedy") (citation and internal quotation marks omitted).

17

trial, and after making "a considered choice not to appeal"); *Simone v. Prudential Ins. Co. of Am.*, No. 04 Civ. 2076, 2005 U.S. Dist. LEXIS 10324, at *2 (S.D.N.Y. May 27, 2005) (denying motion to vacate judgment under Rule 60(b) as a substitute for an appeal after the time to appeal the judgment had expired following bench trial); *cf. Palacios v. Coca-Cola Co.*, 499 F. App'x 54, 56 (2d Cir. 2012) (denying motion where "plaintiffs declined to appeal the dismissal of their petition" in a foreign forum, contravening the district court's express order and established *forum non conveniens* precedent).  In the district court's remaining cases, plaintiffs were denied relief from a contract into which they had deliberately and knowingly entered.  *See United States v. Bank of America*, 14 F.3d 756, 760 (2d Cir. 1994) (affirming denial of motion to set aside a consent decree entered pursuant to a settlement agreement); *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (affirming denial of motion to set aside a stipulation to dismiss with prejudice, noting heavier burden "[w]hen the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits").[9]

_____

[9]     The additional cases NTT cites to are similarly inapposite, either because they involve motions filed "late in the proceedings," *see Abate v. Fifth Third Bank*, No. 13 Civ. 9078, 2019 U.S. Dist. LEXIS 96044, at *9 (S.D.N.Y. June 6, 2019) (denying 60(b)(6) motion where plaintiffs sought to add new party "after the conclusion of discovery and summary judgment motion" and after the deadline set by the court's scheduling order), or motions predicated on counsel's "gross negligence," *see Depasquale v. Depasquale*, No. 12 Civ. 2564, 2013 U.S. Dist. LEXIS 109712, at *17 (E.D.N.Y. Aug. 5, 2013) (denying relief where counsel

Beyond extreme hardship, NTT (and the district court) do not contend with
the additional extraordinary circumstances presented here: ten *en banc* judges
recognized that Plaintiffs had identified "the very figures that might have rendered
[their] claims plausible," dissents joined by five judges expressed concerns that
Plaintiffs had not had a fair opportunity to plead their claims, and dissents joined
by four judges expressly encouraged Plaintiffs to seek leave to amend via Rule 60.
Pls.' Br. at 12 (citing *Mandala II*, 988 F.3d at 672, 679-83).  Plaintiffs raise
important civil rights claims under Title VII, which have never been heard on the
merits (and absent Rule 60 relief, never will be heard), and which this Court has
cautioned against lightly foreclosing.  *See id.* at 42-43; *Mandala II*, 988 F.3d  at
683 (Lohier, J., dissenting from denial of *en banc*) (asserting that "a pleading is the
key to the courthouse door," and that when claims cannot be pled, the "substantive
rights that reside just behind the door wither and die"); *see also Christiansburg
Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 418 (1978) (Title
VII "is the chosen instrument of Congress to vindicate 'a policy that Congress
considered of the highest priority.'" (quoting *Newman v. Piggie Park Enters., Inc.*,
390 U.S. 400, 402 (1968))).

---

failed to review documents that defendants had *provided to her* prior to responding
to the motion to dismiss, and finding that "gross negligence" alone is not a proper
basis of 60(b)(6) relief).

Finally, NTT argues that Plaintiffs cannot establish extraordinary circumstances because even additional statistics showing racial disparities in arrest and conviction rates as education levels rise do not "accurately reflect[] the pool of qualified job applicants in question," and therefore amendment would be futile. Opp. Br. at 43-44. But this is not the standard adopted by this Court in *Mandala I*, where it held that Plaintiffs could have met plausibility with "additional allegations" showing why their national statistics are likely to be "representative," including as education levels rise. 975 F.3d at 212; *see also Mandala II*, 998 F.3d at 668 (Sullivan, J., and Nardini, J., concurring with denial of *en banc*) (Plaintiffs could have satisfied standard by alleging "national statistics indicating that, even as education levels increase, racial disparities between conviction rates remain"). Here, the majority panel and *en banc* decisions provide a strong indication that Plaintiffs have stated a plausible claim of disparate impact discrimination and should be allowed to proceed to discovery. Equipped with the additional statistics the Circuit found sufficient, it is only fair that Plaintiffs should now have the opportunity to have their claims proceed on the merits.

The district court's denial of Rule 60 relief following its pre-discovery dismissal because Plaintiffs failed to seek earlier leave to amend, JA313, against the weight of this Court's (and the Supreme Court's) precedent, where Plaintiffs were never afforded an opportunity to amend, where amending pre-appeal would

have been futile, where NTT faces no discernable prejudice,[10] and where all the other *Foman* factors weigh in favor of amendment, constitutes a clear abuse of discretion.  *See* Pls.' Br. at 30-32.

*   *   *

As the Supreme Court cautioned in *Foman*, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that *the purpose of pleading is to facilitate a proper decision on the merits*."  371 U.S. at 181-82 (emphasis added) (citation omitted).  That principle applies with full force here, where, due to extraordinary circumstances, Plaintiffs have had no true opportunity to have a court hear the substance of their claims, despite the fact that they are able to plead a plausible claim under Title VII.  Accordingly, this Court should find that the district court abused its discretion in denying Plaintiffs' Motion and should grant Plaintiffs leave to amend their complaint.

---

[10]     NTT baldly states that permitting Plaintiffs leave to amend their complaint would be "severely prejudicial" without explaining why.  Opp. Br. at 11.  But it is well-established that the fact that amendment would require NTT to face Plaintiffs' claims, resulting in "the expenditure of additional time, effort, or money," does not constitute "undue prejudice."  *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993)).

Dated: June 3, 2022               Respectfully submitted,
     New York, New York

By: */s/ Christopher M. McNerney*

**OUTTEN & GOLDEN LLP**
Christopher M. McNerney
Ossai Miazad
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**OUTTEN & GOLDEN LLP**
Moira Heiges-Goepfert
One California, 12th Floor
San Francisco, CA 94111
Telephone: (415) 223-7847

**NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.**
Samuel Spital
Rachel M. Kleinman
Tiffani Burgess
40 Rector St., Fifth Floor
New York, NY 10006
Telephone: (212) 965-2200

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of this Circuit's Local Rule 32.1(a)(4)(A) because it contains 5,478 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, and is in Times New Roman, 14-point font.


Dated: June 3, 2022                    Respectfully submitted,
     New York, New York

                                    */s/ Christopher M. McNerney*
                                    Christopher M. McNerney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2022, I uploaded an electronic copy of the foregoing Reply Brief for the Plaintiffs-Appellants to the Court's electronic filing system, thereby electronically serving it upon the following:

JACQUELINE PHIPPS POLITO
ABIGAIL L. GIARRUSSO
**LITTLER MENDELSON, P.C.**
375 Woodcliff Drive, Second Floor
Fairport, NY 14450
(585) 203-3400
jpolito@littler.com
agiarrusso@littler.com

*Attorneys for Defendant-Appellee NTT Data, Inc.*

Six (6) hard copies of the foregoing Reply Brief for the Plaintiffs-Appellants will be sent by hand delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
40 Foley Square
New York, NY 10007
(212) 857-8500

*/s/ Christopher M. McNerney*
Christopher M. McNerney